THE CITY OF ROCKFORD, Plaintiff-Appellant, v. UNIT SIX OF THE POLICEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION OF ILLINOIS *et al.*, Defendants-Appellees.

Second District No. 2—03—0774

Opinion filed July 21, 2004.

Ronald N. Schultz and John P. Giliberti, both of City of Rockford Law Department, of Rockford, for appellant.

Richard J. Reimer, Thomas S. Radja, Jr., and Chris W. Potthoff, all of Richard J. Reimer & Associates, L.L.C., of Hinsdale, for appellees.

JUSTICE GROMETER delivered the opinion of the court:

This case involves the arbitrability of grievances filed by defendant Unit Six of the Policemen's Benevolent and Protective Association of Illinois on behalf of defendants John Cabello and David Swanson. The circuit court of Winnebago County determined that the grievances were subject to arbitration. We reach the opposite conclusion. Accordingly, we reverse the judgment of the circuit court.

The following salient facts are gleaned from the record on appeal. Defendant Unit Six of the Policemen's Benevolent and Protective Association of Illinois (Association) is the exclusive labor representative for police officers employed by plaintiff, the City of Rockford (City). Defendants John Cabello and David Swanson are police officers employed by the City and are members of the Association. Cabello and Swanson were injured in the line of duty. At the time of their injuries, both Cabello and Swanson held jobs outside of the Rockford police department. The City does not dispute that it was aware of the officers' outside employment. As a result of their injuries, both Cabello and Swanson sought workers' compensation benefits.

At all times relevant herein, the Association and the City were parties to a collective bargaining agreement (CBA). The process for resolving grievances is set forth in the CBA. Notably, the CBA provides for the submission to binding arbitration of those disputes that cannot be resolved through the grievance process. On May 21, 1999, the Association filed a labor grievance against the City on Cabello's behalf. Although the grievance has not been made part of the record, it apparently alleged that the City did not provide Cabello with workers' compensation benefits for that portion of earnings attributable to his off-duty employment. On August 6, 1999, the Association filed a

similar grievance on Swanson's behalf. Cabello and Swanson were unable to resolve their grievances through the procedure set forth in the CBA, and arbitration was scheduled for March 31, 2000.

On March 29, 2000, the City filed a complaint for declaratory judgment and stay of arbitration pursuant to section 2(b) of the Uniform Arbitration Act (710 ILCS 5/2(b) (West 2000)). In its complaint, the City argued that it was not required to arbitrate the grievances filed by Cabello and Swanson because the CBA is silent regarding entitlement to workers' compensation benefits for the loss of wages attributable to concurrent employment. In response, defendants filed an answer and affirmative defense. Defendants asserted that the City violated an implied term of the CBA by discontinuing an "unequivocal, clearly enunciated and readily ascertainable past practice" of providing to Association members workers' compensation benefits for the loss of secondary employment wages when the member has been unable to work off duty as a result of an injury sustained while serving as a police officer. Defendants contended that whether the City could discontinue this past practice was subject to arbitration. On August 3, 2000, the City filed a motion to strike and dismiss defendants' affirmative defense. The City alleged that defendants' affirmative defense was insufficient in law because, in deciding whether to stay the arbitration, it was not necessary for the court to consider past practices.

On December 6, 2000, the trial court denied the City's motion to strike and dismiss defendants' affirmative defense. In its 1½-page decision, the court wrote that "payments supplementing those paid under the workman's compensation law are related to conditions of employment, [and] they are presumptively arbitrable" unless the parties agree otherwise. See 5 ILCS 315/8 (West 2000) ("The collective bargaining agreement negotiated between the employer and the exclusive representative shall contain a grievance resolution procedure which *** shall provide for final and binding arbitration of disputes concerning the administration or interpretation of the agreement unless mutually agreed otherwise"); *Illinois Fraternal Order of Police Labor Council v. Town of Cicero*, 301 Ill. App. 3d 323, 334 (1998). The court found that the language of the CBA does not state that "this condition of employment" is not arbitrable. Thus, the court concluded that "[w]hether there is an implied condition in the [CBA] established by past practices of the City in awarding benefits for outside employment is subject to arbitration" under section 8 of the Illinois Public Labor Relations Act (5 ILCS 315/8 (West 2000)).

On December 10, 2001, defendants filed a motion pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West

2000)), seeking to dismiss the City's complaint for declaratory judgment. In their motion, defendants also sought to compel arbitration. Attached to the motion was a letter from the City dated April 11, 2001, listing the names of seven Rockford police officers "who received worker's compensation benefits for secondary employment within the last five years." On March 1, 2002, the court denied defendants' motion. In its memorandum of decision, the court stated that "the merits of the [City's] Petition and the affirmative defense must be heard, with evidence if necessary." The cause was initially set for hearing on May 23, 2002, but was continued to July 18, 2002.

On July 18, 2002, the court entered an agreed order allowing the City to file *instanter* a motion to reconsider the court's ruling on the City's motion to strike and dismiss defendants' affirmative defense. In its motion to reconsider, the City argued that the court's interpretation of section 8 of the Public Labor Relations Act would lead to an absurd result in that it would require the parties to a CBA to anticipate every possible issue that could arise and mutually agree not to arbitrate certain issues. The matter was continued until September 18, 2002.

On September 18, 2002, the court denied the City's motion to reconsider and the parties set a schedule to brief the issues raised by the City in its complaint for declaratory judgment and stay of arbitration. On November 5, 2002, defendants filed a motion for summary judgment, asserting that there were no contested issues of material fact. On December 4, 2002, the City filed, *inter alia*, its motion for summary judgment. On June 12, 2003, the court granted defendants' motion for summary judgment for the reasons "previously outlined in [the] Memorandum of Decision on the Motion to Strike Affirmative Defense." The court concluded that "the arbitrability of Workman's Compensation benefits" and "[t]he issue of whether there is an agreement established by past practices of the City in awarding Workman's Compensation benefits for outside employment" are subject to arbitration. On July 11, 2003, the City filed a notice of appeal.

On appeal, the City challenges the decision of the trial court on several bases. The essence of the City's arguments is that the trial court erred as a matter of law in granting summary judgment in defendants' favor, and we confine our discussion to that issue. At the outset, however, we briefly address a preliminary matter. The City contends in its reply brief that Cabello no longer has an interest in the present proceeding because, on June 20, 2002, the Illinois Industrial Commission approved a settlement of Cabello's case that addressed the nature and extent of an employee's average weekly wage (see 820 ILCS 305/10 (West 2000)) where concurrent employment is at issue.

Unfortunately, the record does not contain a copy of this purported settlement and the City has not provided this court with one. Accordingly, we are without sufficient evidence to determine whether Cabello "no longer has an interest in the present proceeding."

Turning to the merits of the case, we point out that summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Morris v. Margulis*, 197 Ill. 2d 28, 35 (2001). An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law. *Joseph P. Storto, P.C. v. Becker*, 341 Ill. App. 3d 337, 339 (2003). We review *de novo* the trial court's decision granting summary judgment in defendants' favor. *Morris*, 197 Ill. 2d at 35. In addition, we note that the subject of arbitrability is a question of law. *International Union of Operating Engineers, Local Union 965-965A-965B-965C-965RA v. Associated General Contractors of Illinois*, 845 F.2d 704, 706 (7th Cir. 1988).

■ We begin with the principle that arbitration is a favored alternative to litigation because it is effective and cost efficient. *Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 71 (1998). An agreement to submit a dispute to arbitration is a matter of contract. *Salsitz v. Kreiss*, 198 Ill. 2d 1, 13 (2001). Thus, as a general rule, a matter will be referred to arbitration only if the particular matter is of the type that the parties have agreed to submit to arbitration. *United Cable Television Corp. v. Northwest Illinois Cable Corp.*, 128 Ill. 2d 301, 306 (1989). "The question for determination is whether the parties, through their written agreement, showed an intent to have these subjects of dispute referred to arbitration." *United Cable Television Corp.*, 128 Ill. 2d at 307. If it is clear from the agreement that the parties agreed to arbitrate the dispute in question, the court should order arbitration. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 449 (1988). Alternatively, if it is clear from the agreement that the parties did not agree to submit the dispute in question to arbitration, arbitration should be refused. *Donaldson, Lufkin & Jenrette Futures, Inc.*, 124 Ill. 2d at 449. In unclear cases, the question of arbitrability should be referred to the arbitrator. *Donaldson, Lufkin & Jenrette Futures, Inc.*, 124 Ill. 2d at 449-50; see also *Bahuriak v. Bill Kay Chrysler Plymouth, Inc.*, 337 Ill. App. 3d 714, 718 (2003).

■ Because the present dispute involves a public employee labor dispute, it is governed by the Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2000)). In the context of public labor relations, the legislature has reversed the presumption that a particular matter is

arbitrable only if the parties expressly agree to submit the matter to arbitration. *Town of Cicero*, 301 Ill. App. 3d at 334. Section 8 of the Public Labor Relations Act (5 ILCS 315/8 (West 2000)) provides in relevant part:

> "The collective bargaining agreement negotiated between the employer and the exclusive representative shall contain a grievance resolution procedure which shall apply to all employees in the bargaining unit and shall provide for final and binding arbitration of disputes concerning the administration or interpretation of the agreement unless mutually agreed otherwise. *** The grievance and arbitration provisions of any collective bargaining agreement shall be subject to the Illinois 'Uniform Arbitration Act.' " 5 ILCS 315/8 (West 2000).

Thus, with respect to contracts governed by the Public Labor Relations Act, all matters are arbitrable unless the parties agree otherwise. Consequently, the relevant inquiry in a case arising under the Public Labor Relations Act is whether the parties, through their written agreement, showed an intent to exclude from arbitration the disputed matter.

■ In order to resolve this matter then, we must examine the CBA between the Association and the City. The cardinal rule in construing a contract is to ascertain and give effect to the intention of the parties. *Martin v. City of O'Fallon*, 283 Ill. App. 3d 830, 834 (1996). The best indication of the parties' intent is the plain language of the contract. *Chicago Principals Ass'n v. Board of Education of the City of Chicago*, 84 Ill. App. 3d 1095, 1098 (1980). The CBA, by its own terms, constitutes "the entire agreement between the parties." The CBA defines "grievance" as "any dispute concerning the interpretation of, application of, or compliance with the terms of the Agreement." As noted above, the CBA requires unresolved grievances to be submitted to arbitration. However, the arbitrator's authority is limited to "interpret[ing], apply[ing] and determin[ing] compliance with this Agreement" and the arbitrator is prohibited from "add[ing] to, subtract[ing] from or modify[ing] in any way [the CBA's] terms and provisions." In light of these provisions, we find that the Association and the City, through their written agreement, evinced an intent to exclude from arbitration the subject of workers' compensation benefits for wages attributable to concurrent employment.

Specifically, the Association and the City agreed to limit the grievance procedure to "any dispute or complaint concerning the interpretation of, application of, or compliance with, *the terms of this Agreement.*" (Emphasis added.) A review of the CBA reveals that it does not mention the right to workers' compensation benefits for Association

members who work for other employers during their employ with the City. Indeed, the CBA makes no reference to workers' compensation benefits at all. Moreover, an arbitrator is limited to "interpret[ing], apply[ing] and determin[ing] compliance with this Agreement." Thus, an arbitrator cannot address workers' compensation matters because he or she cannot add to or modify the CBA. In other words, by limiting the grievance process to "the terms of this Agreement" and by excluding the matter of workers' compensation benefits from the CBA, the parties implicitly agreed that the matter of workers' compensation benefits would not be amenable to any part of the grievance process, including arbitration. Since matters concerning workers' compensation are not arbitrable under the parties' CBA, the trial court erred as a matter of law in concluding otherwise.

We find support for our decision in *Local 1894 v. Holsapple*, 201 Ill. App. 3d 1040 (1990). At issue in *Holsapple* was the use of auxiliary deputy sheriffs to supplement members of the regular county police department, a practice known as "manning." The *Holsapple* court held that because the parties' CBA did not contain a provision concerning "manning," the dispute was not subject to arbitration under section 8 of the Public Labor Relations Act. *Holsapple*, 201 Ill. App. 3d at 1048-49. Defendants assert that *Holsapple* is distinguishable from the present case because the *Holsapple* court was not presented with a situation involving a past practice. We find defendants' attempt to distinguish *Holsapple* unpersuasive as it is well settled that arbitration agreements will not be extended by construction or implication. *Salsitz*, 198 Ill. 2d at 13; *Flood v. Country Mutual Insurance Co.*, 41 Ill. 2d 91, 94 (1968). As a result, the existence of a past practice is irrelevant.

In rendering its order, the trial court relied on *Town of Cicero*. However, that case is easily distinguishable from the instant litigation. In *Town of Cicero*, three Cicero police officers were notified of their imminent discharge for failure to comply with an ordinance requiring Cicero employees to reside in the town. The officers sought to have their cases heard before an arbitrator in accordance with their CBA. When the town refused to arbitrate the issue, the officers' union filed a motion to compel arbitration. In response, the town filed a motion to dismiss, which the trial court granted. The appellate court reversed. *Town of Cicero*, 301 Ill. App. 3d at 335. The reviewing court acknowledged that the parties' dispute did not concern application of the CBA since the residency requirement was mandated by ordinance. However, the court pointed out that the dispute involved the officers' discharge, and the CBA specifically stated that when an employee is threatened with discharge, he or she has the right to have his or her

case arbitrated. As we mentioned above, the CBA in this case makes no reference to workers' compensation benefits.

Despite the absence of language in the CBA regarding the subject of dispute, the trial court determined that workers' compensation benefits were "presumptively arbitrable" because they were "related to conditions of employment." The court then reasoned that, since the CBA between the City and the Association did not expressly state that "this condition of employment" is not subject to arbitration, section 8 of the Public Labor Relations Act (5 ILCS 315/8 (West 2000)) mandated arbitration. We disagree.

We are not sure exactly what the trial court meant when it stated that workers' compensation benefits were "related to conditions of employment." We do know, however, that the parties never intended workers' compensation benefits to constitute a "condition of employment." The preamble to the CBA between the Association and the City provides in relevant part:

> "This Agreement *** has as its general intent the promotion of a sound, harmonious, and mutually beneficial relationship between the parties hereto. In pursuant thereof, it is the specific purpose of this Agreement to establish an equitable and peaceful procedure for the resolution of differences between the parties on the interpretation and application of this Agreement and *to set forth* the rates of pay, hours of work, and conditions of employment." (Emphasis added.)

As discussed previously, the CBA between the Association and the City does not contain any reference to workers' compensation benefits. Because the parties did not "set forth" the matter of workers' compensation benefits in the CBA, it is apparent that the parties did not consider workers' compensation benefits to be "conditions of employment." Thus, we reject the trial court's attempt to render workers' compensation benefits "presumptively arbitrable" by categorizing them as "related to conditions of employment."

Our decision regarding arbitrability does not foreclose Cabello and Swanson from seeking workers' compensation benefits for the loss of wages attributable to their concurrent employment. The dispute underlying the contract matter in this case is one arising under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2000)). Section 10 of the Workers' Compensation Act (820 ILCS 305/10 (West 2000)) provides a method by which to compute an employee's average weekly wage. Indeed, because the Industrial Commission has specialized expertise in matters of workers' compensation, it is the appropriate forum in which to settle the underlying compensation issue. See *Employers Mutual Cos. v. Skilling*, 163 Ill. 2d 284, 288-89 (1994) ("[A]

matter should be referred to an administrative agency when it has a specialized or technical expertise that would help resolve the controversy, or when there is a need for uniform administrative standards"). Moreover, we observe that section 10 of the Workers' Compensation Act has been applied in cases involving concurrent employment. See *Jacobs v. Industrial Comm'n*, 269 Ill. App. 3d 444, 446-47 (1995); *Village of Winnetka v. Industrial Comm'n*, 250 Ill. App. 3d 240, 244-45 (1993).

■ In sum, we conclude that neither the "arbitrability of Workman's Compensation benefits" nor "whether there is an agreement established by past practices of the City in awarding Workman's Compensation benefits for outside employment" is subject to arbitration under the CBA between the Association and the City. Accordingly, we reverse the judgment of the circuit court of Winnebago County granting summary judgment in defendants' favor. Furthermore, pursuant to our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we grant the City's motion for summary judgment. See *McCray v. Merit Insurance Co.*, 233 Ill. App. 3d 36, 40 (1992) (entering summary judgment on appeal).

Reversed; judgment entered.

McLAREN and CALLUM, JJ., concur.