# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*International Brotherhood of Electrical Workers, Local 193 v. City of Springfield*, 2011 IL App (4th) 100905

| | |
|---|---|
| Appellate Court Caption | INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 193, Plaintiff-Appellee, v. THE CITY OF SPRINGFIELD, ILLINOIS, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-10-0905 |
| Argued<br>Filed | May 11, 2011<br>July 13, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court erred in entering summary judgment for plaintiff union on its petition to compel arbitration of a controversy arising from defendant city's failure to fulfill its promise to increase the salary of a union member who transferred to a nonunion position with the city as part of an oral agreement between the union and the city requiring the union member to end her pending lawsuit against the city, since the employee was no longer a part of the bargaining unit and section 8 of the Public Labor Relations Act did not require arbitration of the controversy. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 10-MR-233; the Hon. Leo J. Zappa, Jr., Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Jenifer L. Johnson, Corporation Counsel, of Springfield (Frank Martinez and Angela Fyans-Jimenez (argued), Assistant Corporation Counsel, of counsel), for appellant.

Michael W. O'Hara (argued), of Cavanagh & O'Hara, of Springfield, for appellee.

Panel

JUSTICE COOK delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, International Brotherhood of Electrical Workers, Local 193 (Union), and defendant, the City of Springfield (City), entered into a collective-bargaining agreement covering specified employees within the City's office of public utilities. The Union submitted a grievance to a representative of the City concerning the City's failure to increase the salary of Dianna Malcom, a former member of the Union. According to the Union, a representative of the City and the Union made an oral agreement to transfer Malcom to a nonunion position in exchange for increasing Malcom's salary to $60,000. The pay increase was to take effect six months after Malcom began her nonunion position. Malcom was transferred to a nonunion position within the City's office of public utilities, but after six months in her new position, she did not receive the expected salary increase.

¶ 2    The Union filed a petition to compel arbitration of the controversy concerning Malcom's salary increase. The Union and the City subsequently filed cross-motions for summary judgment. The trial court granted summary judgment to the Union and ordered the arbitration of the Malcom controversy. For the following reasons, we reverse.

¶ 3                          I. BACKGROUND
¶ 4    In 2007, the Union entered into a collective-bargaining agreement with the City covering specified employees within the City's office of public utilities. The collective-bargaining agreement is effective from October 1, 2007, to September 30, 2011.
¶ 5    The collective-bargaining agreement applies to "all work done by the employees of the different classifications scheduled herein" (collective-bargaining agreement, article I, section 3). Article IV of the collective-bargaining agreement specifies the employee classifications covered by the agreement.
¶ 6    Dianna Malcom served as an operator trainee III at the Miller Street Center for the City's

office of public utilities. The operator trainee III position is specifically listed in the collective-bargaining agreement's classification provisions (collective-bargaining agreement, article IV, section 24). As an operator trainee III, Malcom was part of the bargaining unit represented by the Union. On January 12, 2009, Malcom was transferred to a nonunion position within the City's office of public utilities. Effective as of that date, Malcom became an office coordinator at the Knox Street warehouse.

¶ 7      The Union argues that Malcom agreed to the job transfer after the Union and Todd Renfrow, the general manager for the City's office of public utilities, orally agreed to increase Malcom's salary to $60,000. According to the Union, the pay increase was to take effect six months after Malcom began her new position as an office coordinator. The Union also claimed the oral agreement required Malcom to end a pending lawsuit against the City.

¶ 8      Section 3 of article VIII of the collective-bargaining agreement provides for a six-month probationary employment period for members of the bargaining unit who are transferred to a nonunion position under the jurisdiction of the City's civil service commission. During the six-month probationary period, an employee may return to her former position with the Union. Malcom did not make a request to return to her former position within six months of transferring to her new position.

¶ 9      On December 21, 2009, the Union submitted to Renfrow a written grievance on behalf of Malcom. In the grievance, the Union urged the City's office of public utilities to comply with the terms of the alleged oral agreement made by the Union and Renfrow concerning Malcom's salary. As of the date the grievance was submitted, Malcom had not received the pay increase promised in the alleged oral agreement. The City refused to process the grievance.

¶ 10     On April 22, 2010, the Union filed a petition to compel arbitration of the Malcom controversy. The Union, on June 2, 2010, filed a motion for summary judgment under section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2008)). The City filed a cross-motion for summary judgment on July 15, 2010. When the parties filed cross-motions for summary judgment, they invited the trial court to decide the matters at issue as questions of law. *American States Insurance Co. v. Koloms*, 281 Ill. App. 3d 725, 727-28, 666 N.E.2d 699, 701 (1996).

¶ 11     After a hearing on the motions, the trial court granted the Union's motion for summary judgment and petition to compel arbitration. The court found that the collective-bargaining agreement entered into by the parties was governed by the Illinois Public Labor Relations Act (Act), specifically section 8 of the Act. 5 ILCS 315/8 (West 2008). The court, relying on *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n of Illinois*, 351 Ill. App. 3d 252, 813 N.E.2d 1083 (2004), interpreted section 8 of the Act as "mandating arbitration of grievances unless the parties have specifically agreed otherwise." The court granted summary judgment to the Union and ordered the arbitration of the Malcom grievance, because the court found no evidence that the parties agreed to exclude from the collective-bargaining agreement the arbitration of the Malcom controversy.

¶ 12     This appeal followed.

¶ 13                              II. ANALYSIS

¶ 14        We review a grant of summary judgment *de novo*. *Morris v. Margulis*, 197 Ill. 2d 28, 35, 754 N.E.2d 314, 318 (2001). "An order granting summary judgment should be reversed if the evidence shows that a genuine issue of material fact exists or if the judgment was incorrect as a matter of law." *Joseph P. Storto, P.C. v. Becker*, 341 Ill. App. 3d 337, 339, 792 N.E.2d 384, 386 (2003). Further, the subject of arbitrability is a question of law. *International Union of Operating Engineers, Local Union 965-965A-965B-965C-965RA v. Associated General Contractors of Illinois*, 845 F.2d 704, 706 (7th Cir. 1988).

¶ 15        The City argues the trial court erred in granting the Union's motion for summary judgment and denying its motion for summary judgment for the following primary reasons: (1) no evidence shows the Malcom controversy is arbitrable under the collective-bargaining agreement and (2) the Union lacked standing to file the grievance on behalf of Malcom. The Union claims (1) the Malcom controversy is arbitrable since the parties did not agree to exclude the Malcom controversy from the grievance and arbitration provisions of the collective-bargaining agreement and (2) the issue of the Union's standing is forfeited.

¶ 16        The issue of the Union's standing to file a grievance on behalf of Malcom is forfeited, because the City failed to raise the issue before the trial court. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252-53, 930 N.E.2d 895, 916 (2010).

¶ 17        In unclear cases, the question whether a dispute falls within the scope of an arbitration agreement should be referred to the arbitrator and not left to the courts. *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 445, 530 N.E.2d 439, 443 (1988). However, the arbitrability of the controversy at issue in this case is not unclear. The collective-bargaining agreement entered into by the parties applies only to employees who are members of the bargaining unit covered by the agreement. Malcom does not qualify as a member of the bargaining unit covered by the collective-bargaining agreement at issue because (1) the office-coordinator position she holds is not covered by the collective-bargaining agreement and (2) the probationary period set forth under the agreement for the return of a former Union employee to a Union position expired.

¶ 18        The office-coordinator position held by Malcom is not covered by the collective-bargaining agreement. Section 3 of article I of the collective-bargaining agreement limits the scope of the agreement to "the employees of the different classifications scheduled herein" (collective-bargaining agreement, article I, section 3). The office-coordinator position is not included in the different job classifications set forth in the "Classifications and Duties" portion of the collective-bargaining agreement (collective-bargaining agreement, article IV).

¶ 19        Malcolm also fails to qualify as a probationary member of the bargaining unit. At the time the Union submitted the grievance to Renfrow, Malcolm had been serving in her nonunion position for almost 11 months and she no longer possessed the option under section 3 of article VIII of the collective-bargaining agreement to transfer back to her former position with the Union. Section 3 of article VIII of the collective-bargaining agreement provides for a six-month probationary period in which former Union employees placed under the jurisdiction of the City's civil-service commission may transfer back to their Union positions. Section 3 provides, in relevant part:

"Section 3. Any member of the bargaining unit who is placed by the Employer in a position covered by the City Personnel Code and Civil Service Commission but not covered under this Agreement shall continue to acquire seniority rights to bid on any job opening under this agreement. They may not use their seniority rights to bid on any job opening under this Agreement while in a position not covered by this Agreement. Said employee shall have a six (6) month probation period to assure that both the Employer and the individual have made the right choice. During this six (6) month period said employee will be able to return to his former position provided that he is then physically qualified to return to work."

¶ 20 The Union argues that the primary issue in this case is "whether the parties to a collective-bargaining agreement governed by the [Act] affirmatively agreed and intended to exclude from arbitration the disputed matter." According to the Union, a presumption of arbitrability arises under section 8 of the Act unless the parties to the collective-bargaining agreement specifically agreed to exclude from their agreement the arbitration of the particular matter. The Union claims the Malcom controversy is arbitrable, because the City and Union "never affirmatively agreed" to exclude from the grievance and arbitration procedures in the collective-bargaining agreement issues pertaining to the Malcom controversy.

¶ 21 We agree with the argument made by the plaintiff City of Rockford in *City of Rockford*, that interpreting section 8 of the Act as requiring arbitration unless the matter is specifically excluded from arbitration "would lead to an absurd result in that it would require the parties to a [collective-bargaining agreement] to anticipate every possible issue that could arise and mutually agree not to arbitrate certain issues." *City of Rockford*, 351 Ill. App. 3d at 255, 813 N.E.2d at 1085-86. In *City of Rockford*, the trial court found that section 8 of the Act required arbitration of a particular workers' compensation matter, since the collective-bargaining agreement did not "expressly state" that the matter was not arbitrable. *Id*. at 258-59, 813 N.E.2d at 1088-89. The Union's argument for arbitration, like the trial court's finding of arbitration in *City of Rockford*, produces an absurd result in which any matter, regardless of its relevancy to the collective-bargaining agreement, would be subject to arbitration unless it was specifically excluded from arbitration under the agreement.

¶ 22 The Union's argument also requires an overly broad interpretation of arbitrability under section 8 of the Act. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Donoho*, 204 Ill. 2d 159, 171, 788 N.E.2d 707, 715 (2003). The best evidence of legislative intent is the language of the statute. *People v. Martinez*, 184 Ill. 2d 547, 550, 705 N.E.2d 65, 66 (1998). If possible, the court should interpret the language of a statute according to its plain and ordinary meaning. *Donoho*, 204 Ill. 2d at 171, 788 N.E.2d at 715. Section 8 of the Act requires collective-bargaining agreements to contain "a grievance resolution procedure" and provide for arbitration under specified circumstances. 5 ILCS 315/8 (West 2008). The section provides in relevant part:

"§ 8. Grievance Procedure. The collective[-]bargaining agreement negotiated between the employer and the exclusive representative shall contain a grievance resolution procedure which shall apply to all employees in the bargaining unit and shall provide for final and binding arbitration of disputes concerning the administration or interpretation of the agreement unless mutually agreed otherwise."

-5-

5 ILCS 315/8 (West 2008).

For a dispute to be arbitrable under section 8, the dispute must concern (1) the administration or interpretation of the collective-bargaining agreement and (2) an employee or employees within the bargaining unit. Further, the "unless mutually agreed otherwise" language in the section authorizes parties to place restrictions on the arbitration of specific types of disputes, those "disputes concerning the administration or interpretation of the agreement." *Id.* Except for the mutual agreement of the parties, the section does not contain any other requirement for parties to exempt a dispute from arbitration. Section 8 of the Act does not require the arbitration of the Malcom controversy because the Malcom controversy concerns a matter outside the scope of the section's arbitration mandate, an oral agreement to increase the salary of a person who is not a part of a bargaining unit.

¶ 23     Section 8 of the Act only applies to "employees in the bargaining unit." *Id.* At the time the grievance was submitted, Malcom was not an employee or probationary employee in the bargaining unit. Because Malcom is not a part of a bargaining unit, the grievance and arbitration procedures required under section 8 do not apply to Malcom.

¶ 24     The case of *Village of Franklin Park v. Illinois State Labor Relations Board*, 265 Ill. App. 3d 997, 638 N.E.2d 1144 (1994), *superseded by statute as stated in City of Bloomington v. Illinois Labor Relations Board, State Panel*, 373 Ill. App. 3d 599, 608, 871 N.E.2d 752, 760 (2007) (explaining that the Fire Department Promotion Act mandates the bargaining of issues concerning the promotion of employees to positions outside the collective-bargaining unit), also supports the requirement that, for arbitration to be mandatory, the employee must be part of the bargaining unit. In *Village of Franklin Park*, the International Association of Firefighters, Local 1526, appealed a decision of the Illinois Labor Relations Board concerning whether the Village of Franklin Park committed an unfair labor practice by refusing to bargain concerning proposals for promotion to captain. The court found that the proposal for promotion to captain was not a mandatory subject of bargaining, since captains are not included within the bargaining unit represented by the Union. In reaching its decision, the court interpreted the Act as not requiring parties to a collective-bargaining agreement to "bargain over promotion criteria for employees outside the scope of the bargaining unit." *Village of Franklin Park*, 265 Ill. App. 3d at 1005, 638 N.E.2d at 1149. Like the captains in *Village of Franklin Park*, Malcom, as a nonunion employee, does not fall within the scope of the bargaining unit covered by the collective-bargaining agreement. The City is not required to bargain with the Union concerning nonunion employees like Malcom.

¶ 25                                III. CONCLUSION

¶ 26     For the foregoing reasons, we reverse the circuit court's judgment and grant summary judgment to the City, pursuant to our authority under Illinois Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994). Malcom is not without a remedy. She may file her own breach of contract claim to enforce the alleged oral agreement.

¶ 27     Reversed.