2016 IL App (3d) 150341

Opinion filed March 1, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2016

| | | |
|---|---|---|
| VILLAGE OF BARTONVILLE, a Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-15-0341 Circuit No. 14-MR-741 |
| SALVADOR LOPEZ and POLICEMEN'S BENEVOLENT LABOR COMMITTEE, INC., | ) ) ) | The Honorable James A. Mack, |
| Defendants-Appellants. | ) | Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Presiding Justice O'Brien specially concurred in the judgment, with opinion
Justice McDade dissented, with opinion.

**OPINION**

¶ 1        Plaintiff, the Village of Bartonville (Village), filed a complaint in the trial court seeking a

declaratory judgment and a permanent stay of the arbitration of a grievance filed by defendants,

Salvador Lopez and the Policemen's Benevolent Labor Committee, Inc. (Union), over the

termination of Lopez from the Village's police department.  Defendants filed a motion to compel

arbitration, and the Village filed a motion for summary judgment.  After a hearing, the trial court

granted summary judgment for the Village.  Defendants appeal.  We reverse the trial court's

judgment and remand for the trial court to order the parties to proceed to arbitration so that an arbitrator can decide whether the instant disciplinary matter is subject to arbitration under the parties' agreement.

¶ 2                                                    FACTS

¶ 3        In August 2014, Brian Fengel, the chief of police of the Village's police department, filed a complaint (termination complaint) with the Village's Board of Fire and Police Commissioners (Board) to terminate Officer Salvador Lopez from the Village's police department. Lopez had been a police officer for the Village since February 2012. The complaint alleged that Lopez had violated certain police department procedures in July 2014 when he allegedly drew his firearm during a traffic stop and pointed it at the motorist involved, without proper grounds for doing so.

¶ 4        The Village's police officers were represented by the Union, and the Village had entered into a collective bargaining agreement (collective bargaining agreement or agreement) with the Union. Of relevance to this appeal were Articles V and VI of the agreement. Article V, which was entitled "GRIEVANCE PROCEDURE," provided for a three-step process for the resolution of grievances followed by arbitration, if the grievance had not been resolved. A deadline was set for the completion of each step of the process. More specifically, Article V stated as follows:

> "5.1    Definition. A grievance is a dispute or difference of opinion raised by an Officer Covered by this Agreement or by the Union involving the meaning, interpretation or application of the provisions of this Agreement. ***.
>
>                                    * * *
>
> 5.3    Arbitration. If the grievance is not settled in accordance with the foregoing procedure, the Union may refer the grievance to arbitration. Such

referral must be made within thirty (30) calendar days after receipt of the Village's answer in Step 3.  ***.

5.4    Authority of Arbitrator.  The arbitrator shall have the authority to fashion a remedy but shall have no right to amend, modify, nullify, ignore, add to or subtract from the Provisions of this Agreement.  The arbitrator shall only consider and make a finding with respect to the specific issue or issues submitted to him or her in writing by the Village and the Union and shall have no authority to make a finding on any other issue not so submitted to him or her.  The arbitrator shall be without power to make a finding contrary to or inconsistent with or modifying or varying in any way the application of laws and rules and regulations having the force and effect of the law.  The arbitrator shall submit in writing his or her finding within thirty (30) days following close of the hearing or the submission of briefs by the parties, whichever is later, unless the parties agree to an extension thereof.  The findings shall be based solely upon his or her interpretation of the meaning or application of the express terms of this Agreement to the facts of the grievance presented.  The decision of the arbitrator shall be final and binding.

***

5.6    Exclusivity of Grievance Procedure.  The procedure set forth in this Article shall be the sole and exclusive procedure for resolving any grievance or dispute which was or could have been raised by an Officer covered by this Agreement or the Union.

5.7 Village Initiated Grievances. Nothing contained in this Agreement shall preclude the Village's ability to initiate a grievance and request arbitration under the Agreement. Within thirty (30) days of the event giving rise to the grievance, the Village may initiate a grievance commencing with arbitration in accordance with Article 5.3."

¶ 5 Article VI of the CBA, which was entitled "DISCIPLINE," provided that:

"6.1 Discipline shall be progressive and corrective and shall be designed to improve behavior and not merely punish it. No employee covered by this Agreement shall be suspended, relieved from duty or disciplined in any manner without just cause.

6.2 Disciplinary actions with just cause shall be limited to verbal reprimand, written reprimand, suspension and, in extreme cases, termination."

¶ 6 The termination complaint was scheduled for a hearing before the Board to take place in early October 2014. A few days before the scheduled hearing, defendants filed a complaint for declaratory judgment and injunctive relief in the trial court under case number 14 MR 628. In the declaratory and injunctive relief complaint, defendants argued that the Board no longer had jurisdiction to rule on the termination complaint because the termination complaint had not been heard within 30 days of when it was filed as required under section 10-2.1-17 of the Illinois Municipal Code (65 ILCS 5/10-2.1-17 (West 2014)).

¶ 7 Before the trial court ruled upon defendants' declaratory and injunctive relief complaint, the Village's termination complaint proceeded to a hearing before the Board.[1] Officer Lopez was

_____

[1] The trial court ultimately ruled for the Board on defendant's declaratory and injunctive relief complaint. Defendants have appealed that ruling in a separate appeal.

4

present for the hearing and was represented by an attorney from the Union. At the outset of the hearing, defendants raised that the Board did not have jurisdiction to hear the matter because more than 30 days had passed since the termination complaint had been filed. Defendants also noted that they intended to file a grievance as to any disciplinary action taken by the Board. After considering defendants' arguments, the Board found that it had jurisdiction to hear the termination complaint and proceeded to a hearing on the merits of the complaint. Defendants fully participated in that hearing. At the conclusion of the hearing, the Board ruled that Lopez's employment as a Village police officer was to be terminated.

¶ 8    About 10 days after the Board's decision, defendants filed a grievance with the police department, alleging that Lopez's termination violated various provisions of the collective bargaining agreement. Later that same month, defendants referred the grievance to grievance arbitration after they were unable to resolve the grievance by the three step grievance process set forth in the agreement.

¶ 9    In November 2014, the Village filed the instant complaint in the trial court for declaratory judgment and permanent stay of arbitration. Attached to the complaint were numerous exhibits, including a copy of the collective bargaining agreement, a copy of the termination complaint, transcripts from the termination hearing before the Board, a copy of the Board's termination order, and an affidavit from Chief Fengel. In the affidavit, Fengel attested that: (1) he had been a member of the Village's police department for the past 23 years and had served as chief of police since 1998; (2) during his tenure with the department, any disciplinary action involving termination or a suspension of more than five days had been heard by the Board; (3) at no time during his tenure had a grievance been utilized as part of a disciplinary action involving termination or a suspension of more than five days; (4) at no time during his

5

tenure had grievance arbitration been utilized to resolve any disciplinary action involving termination or a suspension of more than five days; and (5) based upon his experience, Fengel believed that the Board exercised sole authority and maintained exclusive jurisdiction to conduct disciplinary proceedings involving the termination of an officer's employment or the suspension of an officer for more than five days.

¶ 10    In response to the Village's complaint, defendants filed a motion to compel arbitration of the grievance. The Village filed a motion for summary judgment on its complaint, arguing that arbitration of the grievance was barred by the Municipal Code, the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2014)), and by the doctrine of *res judicata*. Defendant's filed a written response to the motion, and the Village filed a written reply to that response, so that the matter was fully briefed prior to hearing.

¶ 11    A hearing was held on the Village's motion for summary judgment in April 2015. After listening to the arguments of the attorneys, the trial court took the matter under advisement. The trial court issued a written ruling later that same month, granting the Village's motion for summary judgment. In the written decision, the trial court stated, among other things, that:

> "Upon review of the [matter], I find that there are no material issues of fact which would preclude summary judgment.
>
> There is no provision in the contract between the [Village] and the [Union] stating, or even inferring, that the grievance procedure should, or could, be used to determine disciplinary matters. As such, [the Village] is entitled to judgment as a matter of law."

¶ 12    Defendants appealed the trial court's ruling.

¶ 13                              ANALYSIS

6

¶ 14    On appeal, defendants argue that the trial court erred in granting summary judgment for the Village on the Village's complaint for declaratory judgment and permanent stay of arbitration. Defendants assert that the trial court's ruling was erroneous because the trial court applied the wrong legal standard in making its determination that arbitration was not required in this particular case. According to defendants, the trial court incorrectly believed that arbitration of the disciplinary grievance was not required, unless the parties specifically agreed in the collective bargaining agreement to arbitrate disciplinary matters. The correct legal standard, however, defendants posit, was the exact opposite—that arbitration of the disciplinary grievance was required, unless the parties mutually agreed in the collective bargaining agreement not to arbitrate disciplinary matters. Although defendants recognize that the collective bargaining agreement was silent on whether disciplinary matters were subject to grievance arbitration, they contend that the silence actually favored their position because, under the established law, every provision in a collective bargaining agreement is subject to arbitration unless mutually agreed otherwise. Defendants assert further that even if it was unclear from the agreement whether the parties had agreed to arbitrate disciplinary matters, the trial court was still required to refer the case to arbitration so that an arbitrator could make that determination. The trial court's failure to do so, according to defendants, was contrary to the presumption that exists in favor of arbitration in unclear cases. For all of the reasons stated, defendants ask that we reverse the trial court's decision and remand this case to the trial court to order the parties to proceed to arbitration.

¶ 15    The Village argues that the trial court's ruling was proper and should be upheld. The Village asserts that grievance arbitration of the Board's termination decision was barred by: (1) the Municipal Code and the Administrative Review Law, which provided that the filing of a complaint for administrative review was the only way by which defendants could challenge the

7

Board's decision; (2) the doctrine of *res judicata*, which barred defendants from attempting to re-litigate Lopez's termination, even in the form of grievance arbitration, because the Board's decision was a final judgment in a case involving the same parties and the same cause of action; and (3) the principle of judicial economy because it was improper for defendants to attempt to use a second procedure (grievance arbitration) to try to obtain a more favorable result than what they received in the first procedure (the hearing before the Board). The Village also asserts that grievance arbitration in this particular case was not supported by the collective bargaining agreement, which evidenced a clear intent by the parties to exclude disciplinary matters from grievance arbitration. In making that assertion, the Village posits that defendants' claim—that arbitration was required unless there was an express provision in the collective bargaining agreement specifically excluding the matter in question from arbitration—was a more rigid standard than what was required under the law. According to the Village, the established law merely required that the agreement evidence the parties' intent to exclude the matter from arbitration and did not require a specific provision to that effect. The Village asserts further that grievance arbitration in this case was also not supported by the past practices of the parties, which showed that the Union had regularly allowed disciplinary matters to be heard by the Board. For all of the reasons set forth, the Village asks that we affirm the trial court's grant of summary judgment in its favor.

¶ 16    In response to the Village's assertions, defendants contend that grievance arbitration is not barred by the Municipal Code or the Administrative Review Law because the Municipal Code specifically allows for alternative or supplemental forms of due process, such as the grievance arbitration provision in the present case. In addition, defendants point out, to the extent that the Municipal Code and the Administrative Review Law conflict with the Illinois

8

Public Labor Relations Act (Labor Act) (5 ILCS 315/1 *et seq*. (West 2014)), which calls for arbitration unless mutually agreed to otherwise by the parties, the provisions of the Labor Act prevail. Defendants contend further that *res judicata* does not bar grievance arbitration here because the requirements for *res judicata* to apply have not been satisfied in that the Board lacked competent jurisdiction to interpret the collective bargaining agreement and that the grievance arbitration would involve different issues than those that were involved in the Board hearing. Defendants also reply that any past practices of the parties do not help the Village's position in this case because the intent to exclude disciplinary matters from arbitration must be demonstrated in the agreement itself. Finally, defendants reply further that previous decisions of the Illinois Labor Relations Board favor their position on this issue. Thus, defendants maintain that this court should reverse the trial court's grant of summary judgment for the Village and remand this case for the trial court to order the parties to proceed to arbitration.

¶ 17    The purpose of summary judgment is not to try a question of fact, but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is

clear and free from doubt. *Id*. In appeals from summary judgment rulings, the standard of review is *de novo*. *Id*.

¶ 18       The Uniform Arbitration Act embodies a legislative policy that favors the enforcement of agreements to arbitrate future disputes. 710 ILCS 5/1 (West 2014); *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 443 (1988). Arbitration is a favored method of resolving disputes because it is viewed as being more effective and more cost-efficient than litigation. See *City of Rockford v. Unit Six of Policemen's Benevolent & Protective Ass'n of Illinois*, 351 Ill. App. 3d 252, 256 (2004). Under the Uniform Arbitration Act, upon application of a party, the trial court is authorized to compel or stay arbitration or to stay a court action pending arbitration. 710 ILCS 5/2 (West 2014); *Donaldson*, 124 Ill. 2d at 443-44. In such a proceeding, the sole issue before the trial court is the very narrow determination of whether there is an agreement between the parties to arbitrate the dispute in question. *Donaldson*, 124 Ill. 2d at 444, 449. The answer to that question and the intertwined question of who is to decide arbitrability must be resolved based upon the parties' agreement. *Id*. at 444-45. In making that determination, a three-pronged approach is applied: (1) if it is clear that the dispute falls within the scope of the arbitration clause, the trial court should decide the arbitrability issue and must compel the parties to arbitration; (2) if it is clear that the dispute does not fall within the scope of the arbitration clause, the trial court should decide the arbitrability issue and must deny the request for arbitration; and (3) if it is unclear whether the dispute falls within the scope of the arbitration clause, the trial court should not decide the issue and should refer the matter to the arbitrator to decide the issue of substantive arbitrability. *Id*. at 444-50.

¶ 19       In addition, because arbitration is a uniquely suitable procedure for settling labor disputes, such as the one in the present case, the arbitration provisions of collective bargaining

10

agreements are to be given a broader interpretation than similar provisions in commercial agreements. *Monmouth Public Schools, District No. 38 v. Pullen*, 141 Ill. App. 3d 60, 63-64 (1985). In fact, the Labor Act, which incorporates the Uniform Arbitration Act by reference, requires that everything recited in a collective bargaining agreement shall be subject to grievance arbitration unless the parties have mutually agreed otherwise. 5 ILCS 315/8 (West 2014); *Thompson v. Policemen's Benevolent Labor Committee*, 2012 IL App (3d) 110926, ¶ 17; *Rockford*, 351 Ill. App. 3d at 257. Thus, in the context of public labor relations, the legislature has reversed the presumption that would usually apply—that a particular matter is arbitrable only if the parties expressly agree to submit the matter to arbitration. *Rockford*, 351 Ill. App. 3d at 256-57. Rather, the relevant inquiry in a case arising under the Labor Act is whether the parties, through their written agreement, showed an intent to exclude the disputed matter from arbitration. *Thompson*, 2012 IL App (3d) 110926, ¶ 17; *Rockford*, 351 Ill. App. 3d at 257. In unclear cases, a presumption in favor of arbitration applies. *Thompson*, 2012 IL App (3d) 110926, ¶ 18. Thus, it must be absolutely clear that a matter is not within the scope of the arbitration agreement for a stay of arbitration to issue. *Id*. If a broad arbitration clause is involved and it is unclear whether the parties have agreed to arbitrate a particular dispute, the question of substantive arbitrability should initially be decided by the arbitrator and not by the courts. *Id*.

¶ 20     Having reviewed the instant collective bargaining agreement and the facts of the present case, we find that the intent of the parties on disciplinary matters is unclear and that the parties must proceed to arbitration so that an arbitrator can decide whether the instant disciplinary matter is, in fact, subject to grievance arbitration under the parties' agreement. See *id*. Because the present case involves a public employee and an agreement that arose under the Labor Act, we

11

must presume that everything recited in the collective bargaining agreement was subject to grievance arbitration, unless the parties mutually agreed otherwise. See 5 ILCS 315/8 (West 2014); *Thompson*, 2012 IL App (3d) 110926, ¶ 17. The mutual agreement must be evident from the language of the collective bargaining agreement itself and past practices will generally be of no avail to the parties. See *Donaldson*, 124 Ill. 2d at 445; *Thompson*, 2012 IL App (3d) 110926, ¶¶ 17-18; *Rockford*, 351 Ill. App. 3d at 258.

¶ 21     When we examine this particular collective bargaining agreement, however, we find it to be unclear as to whether the parties intended to exclude disciplinary matters from grievance arbitration. On the one hand, the arbitration provision in this case was broadly drafted and there was no exclusion provided for disciplinary matters, which would be an indication that the parties intended that disciplinary matters would be subject to grievance arbitration. In addition, as noted above, a presumption would apply in favor of arbitration in the context of the present case. See *Thompson*, 2012 IL App (3d) 110926, ¶ 18. On the other hand, discipline procedures and the arbitration provision were placed in separate and distinct articles of the collective bargaining agreement, which would be an indication that the parties intended that disciplinary matters would not be subject to grievance arbitration. Faced with the uncertainty presented by the parties' collective bargaining agreement, we are compelled under the law to refer this matter to arbitration for the arbitrator to decide whether the instant disciplinary matter was subject to arbitration under the parties' agreement. See *Donaldson*, 124 Ill. 2d at 444-50; *Thompson*, 2012 IL App (3d) 110926, ¶¶ 17-18; *Rockford*, 351 Ill. App. 3d at 256-57.

¶ 22     Having reached that conclusion, we must take a few moments to comment more directly upon some of the assertions raised by the Village in support of its argument. First, as to the application of the Municipal Code and the Administrative Review Law in this case, we cannot

12

conclude outright that it would bar grievance arbitration of the Board's termination decision. The answer to that question would turn upon whether the parties intended in their collective bargaining agreement for the instant disciplinary matter to be subject to grievance arbitration, a determination that will now be made in this case by the arbitrator. The Municipal Code specifically allows for alternative or supplemental forms of due process based upon impartial arbitration as agreed to by the parties in a collective bargaining agreement. See 65 ILCS 5/10-2.1-17 (West 2014). The grievance arbitration provision in the present case is arguably such a provision. Thus, if disciplinary matters are subject to the grievance procedure in the collective bargaining agreement, defendants may have the option of filing a grievance as to the Board's termination decision and may not be limited to administrative review as their only method of challenging the Board's ruling.

¶ 23 Second, as for *res judicata*, we agree with defendants that it would not apply in this particular case. The instant case does not involve a situation such as in the *Monmouth* case, which is relied upon by the Village, where the same party was seeking to submit the same issue to arbitration a second time after that issue had already been resolved by the arbitrator's decision in the first arbitration. See *Monmouth*, 141 Ill. App. 3d at 69-70. That is not the situation before this court in the present case.

¶ 24 Third and finally, regarding the principle of judicial economy, we do not believe that it would prevent the Board's termination decision from being subject to grievance arbitration if that was, in fact, the agreement of the parties. Courts have readily recognized that the concept of judicial economy does not override the agreement of the parties when it comes to an agreement to arbitrate certain matters. See, *e.g.*, *Donaldson*, 124 Ill. 2d at 449 (the supreme court noted that under the Federal Arbitration Act (9 U.S.C. § 1 *et seq*. (1988)), it had been held that the primary

13

purpose of the Act was to enforce the parties' agreement to arbitrate, even if doing so resulted in piecemeal litigation). Thus, we reject the Village's assertions on this issue.

¶ 25                                    CONCLUSION

¶ 26         For the foregoing reasons, we reverse the judgment of the circuit court of Peoria County and remand this case to the trial court to order the parties to proceed to arbitration so that an arbitrator can decide whether the instant disciplinary matter is subject to arbitration under the parties' collective bargaining agreement.

¶ 27         Reversed and remanded with directions.

¶ 28         PRESIDING JUSTICE O'BRIEN, specially concurring.

¶ 29         I specially concur because I do not believe there is any ambiguity in the collective bargaining agreement. This type of grievance resolution was not specifically excluded from the arbitration provision and therefore I would reverse and send the matter to arbitration without any further proceedings to determine the arbitrability of this issue. See *Thompson v. Policemen's Benevolent Labor Committee*, 2012 IL App (3d) 110926. I agree with the majority opinion in all other respects.

¶ 30         JUSTICE McDADE, dissenting.

¶ 31         I am in full agreement with the holdings of the majority that: (1) the Collective Bargaining Agreement (CBA) is unclear concerning the arbitrability of disciplinary decisions; (2) the presumption in labor cases is that issues covered in the CBA are subject to arbitration absent evidence of mutual intent to exclude them; (3) whether such issues are subject to arbitration pursuant to the applicable CBA is to be resolved by an arbitrator; and (4) neither the Municipal Code nor the Administrative Review Law bars grievance arbitration of the Board's decision to terminate the employment of officer Lopez.

14

¶ 32    I am not, however, persuaded by those findings that the trial court's award of summary judgment in favor of the Village was error.  I believe principles of waiver and *res judicata* are applicable in this case and argue in favor of affirming the trial court.

¶ 33    Looking first at waiver, we all agree that in the instant case disciplinary disputes are mentioned in the CBA and are presumptively subject to arbitration unless there is evidence in the CBA of mutual intent to exclude.  The question of the right to arbitrate has not been litigated by these parties but the termination of officer Lopez's employment as a police officer *has*.  I would argue that by failing to grieve the complaint for termination when notice of its filing with the board was received; by raising timing as their only objection in this tribunal to the board's hearing; by participating in that hearing; and by failing to argue there was a requirement to arbitrate and the forestalling a decision by the board, the defendants implicitly acknowledged the right of the board to make the decision and implicitly waived the right, if any, to arbitrate.  They thereby mooted the arbitration issue.

¶ 34    This conclusion is consistent with *Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board*, 170 Ill. App. 3d 463, 483 (1988). The *Board of Governors* court held that a party's legal strategy to willingly participate in a board hearing coupled with a failure to stay the proceedings when they have a collective bargaining agreement that allows for arbitration cannot be later complained about. In other words, willing participation in the board's hearing is not a viable basis to challenge the board's unfavorable decision. Though Lopez and the union did not affirmatively waive their right to arbitrate the matter, they chose to participate in the proceeding rather than raising the argument they pursue in this appeal.

¶ 35    Turning to my second issue, the majority has dealt only cursorily with the *res judicata* issue, considering and distinguishing only one case, *Monmouth Public School District No. 38 v.*

15

*Pullen*, 141 Ill. App. 3d 60 (1985). Although the situation here is different from *Monmouth*, the elements of *res judicata* are nonetheless similarly satisfied when we compare the actual board hearing and the potential arbitration of Lopez's termination.

¶ 36 Again, the *Board of Governors* court proves to be instructive, noting that the "[i]nterests of judicial economy and principles of *res judicata* require affirmance of the determination of the Merit Board once the employee had elected to follow the civil service discharge procedures." *Board of* Governors, 170 Ill. App. 3d at 483-84. In the instant case, the hearing before the board pitted the same village and the same defendants that would be parties in an arbitration proceeding pursuant to the CBA; was conducted by a court of competent jurisdiction; and resulted in a final judgment on the merits. See *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 337 (1996) (discussing the elements of the doctrine of *res judicata*). To allow for arbitration of this matter would be in direct contradiction to the purpose of the doctrine of *res judicata*, judicial economy.

¶ 37 Moreover, it would be redundant to allow binding arbitration of an administrative decision when the tribunals stand on equal judicial footing. Such an allowance would have no limit. This court foreshadowed the potential absurdity of such redundancy in *Village of Creve Coeur v. Fletcher*, 187 Ill. App. 3d 116 (1989). The court proposed the following hypothetical to support its reasoning that the employee could not pursue both arbitration and an administrative law hearing:

> "[S]upposing that the parties proceeded pursuant to the fire and police commission act by going through the Board of Police and Fire Commissioners, the circuit court, the appellate court to the supreme court of Illinois, one of the parties, dissatisfied by the result of the supreme court, could then, *** proceed

16

through the regular grievance procedure where a police officer's immediate sergeant could review and decide contrary to the decision of the supreme court." *Id*. at 118.

¶ 38    In *Peoria Firefighters Local 544, International Assoc'n of Firefighters, AFL-CIO v. Korn,* 229 Ill. App. 3d 1002, 1006-07 (1992), this court found itself faced with the circumstances it had hypothesized in *Village of Creve Coeur*. In *Peoria Firefighters*, the employee's discharge was reviewed by the police and fire commission. On the employee's behalf, the union appealed the administrative decision. When it was affirmed in the trial court, the union attempted to compel arbitration of the matter. This court held that the employee had "availed themselves of every opportunity, at four levels of the administrative and judicial system." *Id*. at 1007. It applied the rationale in *Creve Coeur* to the union's attempt to invoke the use of a fifth tribunal, a panel of arbitrators, and granted the employer's motion to dismiss the petition.

¶ 39    Under the majority's reasoning such an occurrence is, however, possible. Assuming the arbitrator finds discipline to be arbitrable under this CBA, Lopez and the union would be able to have the board decision revisited in a comparable tribunal, binding arbitration, because it is a *supplemental* form of due process. Under this reasoning, an arbitrator would be able to override any administrative review decision even that of our supreme court, because arbitration would be a *supplemental* form of due process. Such reasoning is illogical and contrary to our jurisprudence.

¶ 40    The Municipal Code's allowance of arbitration as an alternative or supplemental form of due process means either/or and not a combination of jurisdictional proceedings and mixed tribunals providing an opportunity for a higher level court to be overruled by a lower level proceeding. Lopez and the union had their opportunity to refuse to participate in the board

17

hearing and later to appeal the board's decision in accordance with administrative review law procedures. They did not. Thus I would find that the matter is barred by the doctrine of *res judicata* and the issue of arbitration is moot.

¶ 41         Therefore, for the forgoing reasons, I respectfully dissent.