# Illinois Official Reports

## Supreme Court

---

*Village of Bartonville v. Lopez*, 2017 IL 120643

---

| | |
|---|---|
| Caption in Supreme Court: | THE VILLAGE OF BARTONVILLE, Appellant, v. SALVADOR LOPEZ *et al.*, Appellees. |
| Docket No. | 120643 |
| Filed | January 20, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the Third District, heard in that court on appeal from the Circuit Court of Peoria County, the Hon. James A. Mack, Judge, presiding. |
| Judgment | Appellate court judgment reversed. Circuit court judgment affirmed. |
| Counsel on Appeal | Kenneth M. Snodgrass, Jr., and Kevin D. Day, both of Hasselberg Grebe Snodgrass Urban & Wentworth, of Peoria, for appellant. |
| | Charles R. Crowley, of Policemen's Benevolent Labor Committee, Inc., of Springfield, for appellees. |
| Justices | JUSTICE THOMAS delivered the judgment of the court, with opinion. |
| | Chief Justice Karmeier and Justices Freeman, Garman, Burke, and Theis concurred in the judgment and opinion. |
| | Justice Kilbride took no part in the decision. |

# OPINION

¶ 1    At issue in this case is whether defendants, Salvador Lopez and Policemen's Benevolent Labor Committee, Inc., are precluded from seeking grievance arbitration of Lopez's termination from his employment with plaintiff Village of Bartonville's police department. The trial court granted summary judgment in favor of plaintiff on its complaint for declaratory judgment and to stay arbitration. The appellate court, with one justice specially concurring and one justice dissenting, reversed the trial court and remanded the case to the trial court with directions to order the parties to proceed to arbitration. 2016 IL App (3d) 150341. This court allowed plaintiff's subsequent petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016).

¶ 2                                      BACKGROUND

¶ 3    This case has a complicated history, so we will set forth the facts in some detail. Defendant Salvador Lopez was a law enforcement officer employed by the plaintiff's police department from February 2012 until October 3, 2014. Defendant Policemen's Benevolent Labor Committee, Inc. (the Union), is the exclusive representative and bargaining agent for all of plaintiff's police officers. At all relevant times, a labor contract was in effect between plaintiff and defendants.

¶ 4    Article V of the labor contract addressed the grievance procedure. Section 5.1 of the labor contract defined "grievance" as "a dispute or difference of opinion raised by an Officer covered by this Agreement or by the Union involving the meaning, interpretation or application of provisions of this Agreement." Section 5.2 sets forth a three-step grievance procedure. Section 5.3 provides that the Union may refer the grievance to arbitration if it is not settled within the three-step procedure. Section 5.6 states that the grievance procedure set forth in section 5 "shall be the sole and exclusive procedure for resolving any grievance or dispute which was or could have been raised by an Officer covered by this Agreement or the Union."

¶ 5    Article VI of the labor contract addressed discipline. Section 6.1 of article VI provided that "[d]iscipline shall be progressive and corrective and shall be designed to improve behavior and not merely punish it. No employee covered by this Agreement shall be suspended, relieved from duty or disciplined in any manner without just cause." Section 6.2 of article VI stated that "[d]isciplinary actions with just cause shall be limited to verbal reprimand, written reprimand, suspension and, in extreme cases, termination."

¶ 6    In August 2014, plaintiff's police chief, Brian Fengel, signed a complaint for termination against Lopez. That complaint was filed with plaintiff's board of fire and police commissioners (the Board). The complaint alleged that Lopez violated certain police department procedures and field training directives during and immediately after a July 7, 2014, traffic stop.

¶ 7    With regard to termination, section 10-2.1-17 of the Illinois Municipal Code (Municipal Code) provides:

> "Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. The hearing shall be as hereinafter provided, unless the employer and the labor

organization representing the person have negotiated an alternative or supplemental form of due process based upon impartial arbitration as a term of a collective bargaining agreement. Such bargaining shall be mandatory unless the parties mutually agree otherwise. Any such alternative agreement shall be permissive.

*** The board of fire and police commissioners shall conduct a fair and impartial hearing of the charges, to be commenced within 30 days of the filing thereof, which hearing may be continued from time to time. *** In the conduct of this hearing, each member of the board shall have power to administer oaths and affirmations, and the board shall have power to secure by its subpoena both the attendance and testimony of witnesses and the production of books and papers relevant to the hearing." 65 ILCS 5/10-2.1-17 (West 2014).

¶ 8        Counsel for defendant Union represented defendant Lopez throughout the proceedings. On August 28, 2014, counsel for the Board spoke with defendants' counsel by telephone and proposed that a hearing on the termination complaint take place between September 2 and 5, 2014. Defendants' counsel responded that those dates would not work, as he would not have enough time to prepare. On September 2, 2014, the Board's counsel sent an e-mail to defendants' counsel stating that the next available hearing date was September 25, 2014. Defendants' counsel responded that same day, suggesting that the hearing be set for October 3 or 10, 2014. On September 3, 2014, counsel for the Board confirmed that the hearing would be set for October 3, 2014.

¶ 9        On September 29, 2014, prior to the agreed upon October 3 hearing, Lopez filed a complaint for declaratory judgment in Peoria County circuit court arguing that the Board was divested of jurisdiction over the termination complaint because the Board had failed to commence a termination hearing within the mandatory 30-day time limit for a hearing under section 10-2.1-17 of the Municipal Code. The Board responded that it did not lose jurisdiction because it was at Lopez's request that the hearing was set more than 30 days after the filing of the charges against Lopez.

¶ 10        Both parties filed motions for summary judgment in Lopez's declaratory judgment action in January 2015. The trial court granted summary judgment in favor of the Board and denied Lopez's motion for summary judgment. The trial court also denied Lopez's postjudgment motion to vacate the judgment, finding that the delay in the commencement of the hearing was attributable to Lopez. The appellate court, with one justice dissenting, affirmed the trial court. 2016 IL App (3d) 150520. Lopez has not petitioned this court for leave to appeal that decision.

¶ 11        Although Lopez had filed a complaint for declaratory judgment contesting the Board's jurisdiction to conduct the termination hearing, the hearing nonetheless proceeded on October 3, 2014. At the outset of the hearing, defendants' attorney noted he had filed a complaint with the circuit court contesting the Board's jurisdiction to conduct the hearing because more than 30 days had passed since the charge against Lopez had been issued. Defense counsel stated that if the Board determined that it had jurisdiction despite the passing of the 30-day time limit, defendants would participate without waiving the issue of jurisdiction. Counsel also stated that the Union's presence did not waive its contractual right to grieve a suspension or termination, if ordered by the Board.

¶ 12        At the hearing, five witnesses testified, as well as Lopez. Defense counsel participated in the hearing. Defense counsel cross-examined the witnesses and made a closing argument.

Defendants' counsel again reiterated in his closing argument that the presence of the Union and of Lopez did not waive defendants' argument that the Board lost jurisdiction by failing to commence a hearing within 30 days and did not waive defendants' right to grievance arbitration under the contract if discipline was issued.

¶ 13     At the conclusion of the hearing, the Board issued an order of discharge. The Board found that it had jurisdiction of the subject matter of the charges and of Lopez. The Board then found that cause existed for Lopez's termination from his position as a police officer and as a member of the plaintiff's police department. The Board therefore ordered that Lopez be discharged and removed from his position as a police officer and as a member of plaintiff's police department as of October 3, 2014.

¶ 14     Section 10-2.1-17 of the Municipal Code provides for review of Board decisions. The statute provides that:

> "The provisions of the Administrative Review Law [735 ILCS 5/3-101 *et seq.* (West 2014)] and all amendments and modifications thereof, and the rules adopted pursuant thereto, shall apply to and govern all proceedings for the judicial review of final administrative decisions of the board of fire and police commissioners hereunder. The term 'administrative decision' is defined as in Section 3-101 of the Code of Civil Procedure." 65 ILCS 5/10-2.1-17 (West 2014).

Defendants never sought judicial review of the Board's final decision pursuant to the Administrative Review Law.

¶ 15     However, on October 10, 2014, defendants filed a grievance with plaintiff's police department. The grievance asserted that Lopez was terminated without just cause in violation of article VI, section 6.1, of the parties' labor contract. The grievance stated that, pursuant to article VI, section 6.2, of the labor contract, plaintiff was required to reserve termination solely for "extreme cases" and Lopez's case was not an extreme case. The termination also violated the labor contract because the termination was not progressive or corrective as required by article VI, section 6.1. Finally, the grievance alleged that in conducting a hearing before the Board, plaintiff violated article V, section 5.6, which states that the contractual grievance procedure "shall be the sole and exclusive procedure for resolving any grievance or dispute which was or could have been raised by an Officer covered by this Agreement or the Union." When the grievance was not resolved by the three-step grievance process identified in the parties' labor contract, defendants referred the grievance to grievance arbitration on October 28, 2014.

¶ 16     Plaintiff then filed a complaint for declaratory judgment and for stay of arbitration on November 21, 2014, alleging that Lopez's termination and subsequent grievance were not arbitrable matters. Plaintiff noted that defendants' September 29, 2014, complaint for declaratory judgment sought an injunction solely on the grounds that the 30-day time period for conducting the termination period had run, in violation of section 10-2.1-17 of the Municipal Code. Plaintiff argued that in relying on section 10-2.1-17, which granted the Board the authority to hear disciplinary proceedings, defendants essentially admitted that the Board initially had jurisdiction to conduct the termination procedure but lost that jurisdiction when it did not conduct the hearing within 30 days. Because the Board had jurisdiction and issued a final decision on the merits, any review of the Board's decision was subject to the Administrative Review Law, which was the exclusive means to review the Board's decision to

terminate Lopez. Plaintiff contended that by attempting to grieve and arbitrate Lopez's termination, defendants were improperly seeking review of the Board's final decision in violation of the Municipal Code and the Administrative Review Law.

¶ 17    Plaintiff also argued that the grievance and arbitration provisions in the labor contract did not apply to termination or discharge proceedings because the parties did not negotiate an alternative form of due process based upon impartial arbitration in their labor contract. Plaintiff sought an order declaring that Lopez's grievance was not arbitrable and staying any arbitration proceedings requested by defendants.

¶ 18    Plaintiff filed a motion for summary judgment on January 14, 2015, noting that defendants had failed to file a timely answer or appearance in response to its complaint for declaratory judgment. Plaintiff also sought summary judgment on the basis that defendants had failed to review the Board's decision under Administrative Review Law and on the basis of *res judicata*.

¶ 19    On February 25, 2015, defendants were given leave to file their answer and affirmative defenses to plaintiff's complaint for declaratory judgment, as well as a counterclaim setting forth a motion to compel arbitration of their grievance. On March 11, 2015, plaintiff filed a second motion for summary judgment and a motion to dismiss defendants' counterclaim.

¶ 20    The motions proceeded to a hearing on April 1, 2015. The parties agreed to focus their argument on plaintiff's January 14, 2015, motion for summary judgment, as a ruling in favor of plaintiff on that motion would render the remaining motions moot. Plaintiff argued that it was entitled to a declaratory judgment and a permanent stay of arbitration based on the fact that a full hearing had been held before the Board. Because defendants did not seek administrative review of the Board's decision terminating Lopez, that decision became final, and the doctrine of *res judicata* barred defendants from proceeding with further arbitration of the matter.

¶ 21    Defendants responded that under the parties' labor contract, as well as Illinois statute, the issuance of discipline by plaintiff is subject to the arbitration procedure set forth in the labor contract. Defendants relied on the Illinois Public Labor Relations Act (5 ILCS 315/1 *et seq.* (West 2014)), as well as the Uniform Arbitration Act (710 ILCS 5/1 *et seq.* (West 2014)), in support of their argument.

¶ 22    Defendants asserted that there was no adverse disciplinary action until the Board issued its decision terminating Lopez. Once the Board terminated Lopez, it was up to the arbitrator to decide whether the termination violated the labor contract. Defense counsel stated that the arbitrator would not be limited to reviewing the findings of the Board, as would happen in an administrative review, but rather could look at the termination itself and determine whether the labor contract applied. Defense counsel agreed with the trial court that in such a case, the decision of the Board essentially would have been for naught, other than to get the case to the arbitrator so the parties could start all over again.

¶ 23    Following hearing, the trial court took the matter under advisement. The trial court then issued a written order granting plaintiff's motion for summary judgment, finding that there were no material issues of fact and that plaintiff was entitled to judgment as a matter of law. The trial court's order did not address plaintiff's *res judicata* argument. The order found, "There is no provision in the contract between the Village of Bartonville and the Policemen's Benevolent Labor Committee, Inc [*sic*] stating, or even inferring, that the grievance procedure

should, or could, be used to determine disciplinary matters. As such, Plaintiff is entitled to judgment as a matter of law."

¶ 24    Defendants appealed the trial court's order. The appellate court, with one justice specially concurring and one justice dissenting, reversed and remanded. 2016 IL App (3d) 150341.

¶ 25    On appeal, defendants argued that the trial court applied the wrong legal standard in determining that arbitration was not required in this case. Defendants stated that the trial court incorrectly believed that arbitration of the disciplinary grievance was not required unless the parties specifically agreed in the labor contract to arbitrate disciplinary matters. Defendants asserted that the correct standard was the opposite: that arbitration was required unless the parties mutually agreed in the labor contract not to arbitrate disciplinary matters. Defendants acknowledged that the labor contract at issue was silent concerning whether disciplinary matters were subject to grievance arbitration but contended that the silence favored their position.

¶ 26    Plaintiff responded that grievance arbitration was barred by (1) the Municipal Code and the Administrative Review Law, which provided that the filing of a complaint for administrative review was the only way defendants could challenge the Board's decision, (2) the doctrine of *res judicata*, which barred defendants from relitigating Lopez's termination, and (3) the principle of judicial economy because it was improper for defendants to attempt to use a second procedure—grievance arbitration—to try to obtain a more favorable result than what they received in the first procedure. Plaintiff also argued that established law required only that the labor contract evidence the parties' intent to exclude the matter from arbitration and did not require a specific provision to that effect.

¶ 27    In reversing the trial court, the appellate court majority found that the intent of the parties on disciplinary matters was unclear and that the parties must proceed to arbitration so that an arbitrator could decide whether the disciplinary matter at issue was subject to grievance arbitration under the parties' contract. 2016 IL App (3d) 150341, ¶ 21. With regard to plaintiff's claim that defendants could only challenge the Board's decision through the Municipal Code and the Administrative Review Law, the appellate court majority stated that whether application of those statutes would bar grievance arbitration would turn on whether the parties' intent in their labor contract was for the disciplinary matter to be subject to grievance arbitration. *Id.* ¶ 22.

¶ 28    The appellate court majority also found that *res judicata* did not apply. The court distinguished the case before it from *Monmouth Public Schools, District No. 38 v. Pullen*, 141 Ill. App. 3d 60 (1985), relied upon by the plaintiff. The court stated, "[t]he instant case does not involve a situation such as in the *Monmouth* case, which is relied upon by the Village, where the same party was seeking to submit the same issue to arbitration a second time after that issue had already been resolved by the arbitrator's decision in the first arbitration." 2016 IL App (3d) 150341, ¶ 23.

¶ 29    Finally, the court concluded that judicial economy would not prevent the Board's termination decision from being subject to grievance arbitration if that was the agreement of the parties. *Id.* ¶ 24.

¶ 30    The concurring justice did not believe there was any ambiguity in the labor contract or that this type of grievance resolution was specifically excluded from the arbitration provision. *Id.*

¶ 29 (O'Brien, P.J., specially concurring). For that reason, the concurring justice would reverse and send the matter to arbitration without any further proceedings. *Id.*

¶ 31    In contrast, the dissent would affirm the trial court on the basis of waiver and *res judicata*. The dissent stated, with regard to waiver:

> "I would argue that by failing to grieve the complaint for termination when notice of its filing with the board was received, by raising timing as their only objection in this tribunal to the Board's hearing, by participating in that hearing[,] and by failing to argue there was a requirement to arbitrate and the [*sic*] forestalling a decision by the Board, the defendants implicitly acknowledged the right of the Board to make the decision and implicitly waived the right, if any, to arbitrate. They thereby mooted the arbitration issue." *Id.* ¶ 33 (McDade, J., dissenting).

¶ 32    The dissent also believed that the elements of *res judicata* had been met in this case. The hearing before the Board involved the same village and the same defendants that would be parties to an arbitration proceeding pursuant to the labor contract. *Id.* ¶ 36. The hearing was conducted by a court of competent jurisdiction, and the hearing resulted in a final judgment on the merits. *Id.* Therefore, to allow for arbitration of the matter would be in direct contradiction to the purpose of the doctrine of *res judicata*—judicial economy. *Id.*

¶ 33                                    ANALYSIS
¶ 34    This case comes to us on appeal of the trial court's order granting summary judgment in favor of plaintiff. Summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). Rulings on motions for summary judgment are reviewed *de novo*. *Id.* This court may affirm a grant of summary judgment on any basis appearing in the record, regardless of whether the lower courts relied upon that ground. *Id.*

¶ 35    Turning to the substance of the instant appeal, we note that the focus of the parties' arguments differs significantly. As in the lower courts, the focus of plaintiff's argument on appeal is that *res judicata* bars defendants from proceeding with arbitration of their grievance.

¶ 36    Defendants respond that the relevant inquiry in this case is whether the parties excluded disciplinary matters from arbitration. Defendants focus the majority of their brief addressing their right to grievance arbitration. Defendants note that the labor contract contains a grievance procedure in article V and provides for employee discipline in article VI, although the contract is silent with regard to the arbitrability of discipline. Defendants assert that case law and statutory law dictate that a labor contract's silence with regard to the arbitrability of discipline means that discipline matters are subject to grievance arbitration, because parties must show an intent to exclude the matter from arbitration. Defendants contend the singular issue in this case, then, is whether there was an agreement to arbitrate employee discipline, which is an issue for the arbitrator to decide. Defendants argue that the Municipal Code and the Administrative Review Law cannot divest defendants of their statutory right to grievance arbitration.

¶ 37    At the outset, we note that we agree with defendants that their labor contract is silent concerning the arbitrability of discipline and that this court has held that "when the language of an arbitration clause is broad and it is unclear whether the subject matter of the dispute falls

within the scope of arbitration agreement, the question of substantive arbitrability should initially be decided by the arbitrator." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 447-48 (1988). It also is correct that the Illinois Uniform Arbitration Act embodies a legislative policy favoring enforcement of agreements to arbitrate future disputes. *Id.* at 443. Moreover, defendants are correct that rather than divest defendants of their statutory right to grieve arbitration, the Municipal Code provides for a hearing "unless the employer and the labor organization representing the person have negotiated an alternative or supplemental form of due process based upon impartial arbitration as a term of a collective bargaining agreement," in which case such bargaining is mandatory unless the parties mutually agree otherwise. 65 ILCS 5/10-2.1-17 (West 2014).

¶ 38       As our appellate court has recognized, however, a contractual right to arbitrate can be waived like any other contractual right. *Schroeder Murchie Laya Associates, Ltd. v. 1000 West Lofts, LLC*, 319 Ill. App. 3d 1089, 1095-96 (2001). While a waiver of arbitration rights is disfavored, a waiver may occur when a party acts in a manner that is inconsistent with the arbitration clause in an agreement, thus indicating an abandonment of the right to arbitration. *Yates v. Doctor's Associates, Inc.*, 193 Ill. App. 3d 431, 440 (1990).

¶ 39       The dissent in this case believed that defendants implicitly waived the right, if any, to arbitrate. 2016 IL App (3d) 150341, ¶ 33 (McDade, J., dissenting). Therefore, the dissent below would find that defendants' waiver of their right to arbitration mooted the issue of arbitration on appeal. *Id.* We agree.

¶ 40       The chief of police in this case filed his complaint with the Board to terminate Lopez on or around August 18, 2014. Counsel for the Board had two conversations with counsel for defendants on August 28 and September 2, 2014, concerning the scheduling of a date for the hearing before the Board. There was no testimony that, in either conversation, counsel for defendants claimed that the proper avenue for discipline was pursuant to the parties' labor contract, nor did counsel assert Lopez's right to proceed pursuant to the labor contract. Further, although counsel for defendants filed a complaint for declaratory judgment and injunctive relief prior to the Board hearing on October 3, 2014, that complaint alleged only that the Board was without jurisdiction to conduct the hearing because the termination complaint had not been heard within 30 days of when it was filed. The complaint for declaratory judgment and other relief did not seek to stay the hearing before the Board on the basis that disciplinary matters could only be pursued as set forth in the parties' labor contract.

¶ 41       Defendants then participated in the hearing before the Board. Lopez testified, and defense counsel cross-examined witnesses and gave a closing argument. Although defense counsel stated during the hearing that the presence and participation of the Union and the Board did not waive their right to file a grievance, defense counsel never questioned the Board's jurisdiction to conduct the hearing based upon defendants' right to grievance arbitration under the parties' labor contract, nor did defense counsel ask the Board or the circuit court to stay the proceedings pending defendants' filing of a grievance.

¶ 42       In the trial court hearing on plaintiff's motion for summary judgment, defendants stated that there was no adverse disciplinary action until the Board issued its decision terminating Lopez, implicitly suggesting that defendants could not have filed their grievance until the Board hearing was concluded. That claim is belied by the grievance itself. The grievance alleged that in conducting a hearing before the Board, plaintiff violated article V, section 5.6,

of the labor contract, which provides that the grievance procedure "shall be the sole and exclusive procedure for resolving any grievance or dispute which was or could have been raised by an Officer covered by this Agreement or the Union."

¶ 43    Moreover, defendants were aware from the outset that plaintiff was seeking to terminate Lopez's employment and that employee termination was addressed in the discipline section of the labor contract. The proceedings in this case were initiated when the police chief signed and filed a complaint for termination against Lopez. Counsel for defendant Union represented Lopez at the termination hearing. Had defendants believed that the labor contract divested the Board of its authority to terminate Lopez's employment, defendants could have sought an injunction to stay the Board from continuing the hearing. Defendants did not do so, choosing instead to participate in the hearing before the Board. Defendants cannot now complain of that choice.

¶ 44    Defendants then suggest that the portion of the Municipal Code providing for an "alternative or supplemental form of due process" means that they could elect to have the Board proceedings and arbitration proceedings operate in conjunction with one another or could elect to forgo a hearing before the Board and proceed directly to arbitration. The dissent below found this suggestion illogical because an arbitrator would be able to override any administrative review decision, even administrative review from this court, on the basis that arbitration was a supplemental form of due process. 2016 IL App (3d) 150341, ¶ 39 (McDade, J., dissenting).

¶ 45    The court in *Village of Creve Coeur v. Fletcher*, 187 Ill. App. 3d 116 (1989), hypothesized such a scenario in holding that the defendant police officer could not pursue both administrative review and arbitration of the same decision. The court explained:

"In this case, for instance, supposing that the parties proceeded pursuant to the fire and police commission act by going through the Board of Police and Fire Commissioners, the circuit court, the appellate court to the supreme court of Illinois, one of the parties, dissatisfied by the result of the supreme court, could then, according to the circuit court's interpretation, proceed through the regular grievance procedure where a police officer's immediate sergeant could review and decide contrary to the decision of the supreme court." *Id.* at 118.

¶ 46    The concerns of the court in *Village of Creve Coeur* are well taken. The dissent below correctly concluded that "[t]he Municipal Code's allowance of arbitration as an alternative or supplemental form of due process means either/or and not a combination of jurisdictional proceedings and mixed tribunals providing an opportunity for a higher level court to be overruled by a lower level proceeding." 2016 IL App (3d) 150341, ¶ 40 (McDade, J., dissenting).

¶ 47    We therefore reject defendants' claim that they could elect to have proceedings before the Board and arbitration proceedings operate in conjunction with one another. Defendants chose to participate in the hearing before the Board rather than seek to stay the hearing and proceed in accordance with their labor contract. In so doing, defendants acted inconsistently with their right to arbitrate. The crucial inquiry in determining whether a party has waived its contractual right to arbitrate is whether the party has acted inconsistently with its right to arbitrate. *Schroeder Murchie Laya*, 319 Ill. App. 3d at 1098. Defendants' actions in participating in the

Board hearing prior to filing their grievance waived any potential right to statutory arbitration of that grievance.

¶ 48    Moreover, as argued by plaintiff and discussed by the dissent below, *res judicata* provides an alternative bar that prevents defendants from further litigating Lopez's termination through arbitration. In addition to waiver, the right to pursue an arbitration action may be limited by the effect of the *res judicata* doctrine. *Peregrine Financial Group, Inc. v. Ambuehl*, 309 Ill. App. 3d 101, 107 (1999). Thus, if the arbitration action involves issues previously reached, arbitration is barred notwithstanding the parties' contractual rights to bring such actions. *Id.*

¶ 49    This court has long recognized that few rules are more essential or more firmly embedded in our jurisprudence than that of *res judicata*. *Hughey v. Industrial Comm'n*, 76 Ill. 2d 577, 582 (1979). *Res judicata* is a judicially created doctrine resulting from the practical necessity that there be an end to litigation and that controversies once decided on their merits shall remain in repose. *Id.* Thus, under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998). The bar extends to what was actually decided in the first action, as well as those matters that could have been decided in that action. *Id. Res judicata* embraces all grounds of recovery and defense involved and which might have been raised in the first action. *Hughey*, 76 Ill. 2d at 583.

¶ 50    Three requirements must be satisfied in order for the doctrine of *res judicata* to apply. There must be (1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) an identity of cause of action, and (3) an identity of parties or their privies. *River Park, Inc.*, 184 Ill. 2d at 302. This court applies a transactional test to determine whether there is an identity of cause of action. Under the transactional test, the assertion of different theories or kinds of relief still constitutes a single cause of action if a single group of operative facts gives rise to the assertion of relief. *Id.* at 311.

¶ 51    With these principles in mind, we examine the case before us. Plaintiff argues that *res judicata* applies because the Board, with competent jurisdiction, has issued a final judgment on the merits of Lopez's termination. There is identity of the parties for purposes of *res judicata* because the parties to this matter have remained the same since the inception of the termination process. In addition, there is identity of the cause of action for purposes of *res judicata* under the transaction test. Because the Board issued a final judgment on the merits of Lopez's termination and because defendants have failed to seek administrative review of the Board's decision, any attempt by defendants to relitigate the same cause of action is barred by the doctrine of *res judicata*.

¶ 52    Defendants respond that plaintiff cannot establish two of the three prongs of the test for determining whether *res judicata* applies. Defendants assert that plaintiff cannot establish that there was a final judgment rendered by a court of competent jurisdiction. Defendants also contend that plaintiff cannot establish an identity of cause of action.

¶ 53    The appellate court in this case summarily rejected plaintiff's *res judicata* argument. As noted, the appellate court majority found that this case did not involve a situation such as that in *Monmouth Public Schools* because the court in that case held that an arbitration was barred by the *res judicata* effect of the prior arbitration award involving the same parties and the same issue. *Monmouth*, 141 Ill. App. 3d at 60. Without analysis, the appellate court in this case

found the situation presented in *Monmouth* was not present in this case, presumably because this case involved a prior Board hearing and not a prior arbitration. 2016 IL App (3d) 150341, ¶ 23.

¶ 54     As pointed out by the dissent below, however, the majority never acknowledged other analogous appellate decisions, which found prior board hearings had a *res judicata* effect on grievance arbitration. For example, in *Board of Governors of State Colleges & Universities v. Illinois Educational Labor Relations Board*, 170 Ill. App. 3d 463 (4th Dist. 1988), Northeastern University filed charges seeking the discharge of Shellie Brown. Brown filed a step III grievance, which the university returned to Brown, informing her that her only option was to appeal her discharge through the merit board. Brown sent a letter to the merit board requesting a hearing to contest her discharge. A hearing was held, in the middle of which counsel for Brown moved to terminate the hearing on the theory that the hearing was premature and without jurisdiction because the collective bargaining grievance procedure should take precedence. Counsel's motion was denied, and the hearing officer found the university had shown cause for discharge. Brown's collective bargaining representative then filed an unfair labor practice charge against the plaintiff for its refusal to process Brown's grievance. A hearing officer at the hearing on Brown's unfair labor practice charge recommended that the Illinois Educational Labor Relations Board order the plaintiff to process Brown's grievance pursuant to the collective bargaining agreement. The board adopted the hearing officer's recommended order.

¶ 55     The plaintiff appealed. One of the issues plaintiff raised on appeal was that *res judicata* should apply to preclude an arbitrator from determining the issue of good cause for discharge because allowing the grievance to go to arbitration would allow a collateral attack on the merit board's decision. *Id.* at 481. The appellate court agreed, finding that under the current Illinois law and the bargaining agreement, Brown had the option of pursuing the statutory merit board proceedings or the collective bargaining agreement. *Id.* at 483. The court found that Brown could not now complain given her request to the merit board for a hearing and her failure to request a stay of the merit board proceedings. *Id.* The court explained:

> "While the result here may seem harsh, it is no more so than in myriad other proceedings where a litigant or party is required to raise their objections to a proceeding in which they appear, and also to pursue the objections through final review in order to preserve them. The fact that the employee's grievance was returned to her prior to the proceeding before the Merit Board did not eliminate her duty to pursue her objections to that proceeding, rather than permitting its decision to become final.
>
> In this case, Brown did not seek judicial review of the Merit Board decision and did not seek a stay of its enforcement. ***
>
> *** Interests of judicial economy and principles of *res judicata* require affirmance of the determination of the Merit Board once the employee has elected to follow civil service discharge procedures." *Id.* at 483-84.

¶ 56     Another case overlooked by the appellate court majority was *Village of Creve Coeur*, discussed *supra*. 187 Ill. App. 3d 116. There, the board of fire and police commissioners of the village of Creve Coeur disciplined the defendant police officer with a 30-day suspension. Thereafter, the police officer and his union filed a grievance pursuant to a collective bargaining agreement with the village contesting the board's decision. The officer and the union also filed

a complaint for administrative review of the board's decision. The village refused to consider the grievance. The village filed an action in the circuit court seeking a declaratory judgment that the board's disciplinary action was not subject to the grievance procedure outlined in the parties' collective bargaining agreement. The officer and the union filed a counterclaim seeking to compel the village to arbitrate. The circuit court entered summary judgment in favor of the officer and the union. The appellate court reversed, noting in the hypothetical set forth, *supra*, that to hold otherwise could lead to illogical results. *Id.* at 118.

¶ 57    The court in *Peoria Firefighters Local 544 v. Korn*, 229 Ill. App. 3d 1002 (1992), found that the *Village of Creve Coeur* hypothetical was brought to life in the case before it. There, the plaintiff firefighters were charged by the city of Peoria with sexual misconduct while on duty and with insubordination concerning an incident occurring on July 13, 1986. Following a hearing before the fire and police commission, the firefighters were dismissed, and the appellate court affirmed the commission's decision discharging the firefighters. On July 18, 1988, the city of Peoria entered into a collective bargaining contract with plaintiff Peoria Firefighters Local 544, which was made retroactive to January 1, 1986. The firefighters then filed a grievance against the city, alleging that the commission's actions violated certain provisions of the collective bargaining agreement. The grievance was referred to arbitration, but the parties agreed to delay arbitration in order to allow completion of the then-pending litigation arising from administrative review of the commission's actions.

¶ 58    After that litigation was completed, the Union notified the city of its desire to proceed to arbitration. The city refused the request for arbitration, claiming that the firefighters had waived their right to arbitrate when they elected to pursue the fire and police commission option. The plaintiffs then filed a petition to compel arbitration. The circuit court granted the city's motion to dismiss the petition.

¶ 59    On appeal, the plaintiffs, like the defendants in this case, argued that the doctrine of *res judicata* did not apply because the proceedings before the commission and the courts involved issues that were different from those which would be addressed in an arbitration hearing. *Id.* at 1005. The plaintiffs claimed there was a difference between the standard of just cause that would be applied by an arbitrator under the collective bargaining agreement and the standard that had been applied by the commission and the courts in the prior litigation. *Id.* The court found no such distinction existed, finding that

> "the underlying facts of the instant case are identical. The relief sought is also identical. This court therefore will not engage itself in a semantical exercise in order to skirt the judicially created doctrine of *res judicata*." *Id.* at 1006.

The court further observed that the parties had proceeded before the board of fire and police commissioners, the circuit court, the appellate court, and even the supreme court and now, dissatisfied with the result, sought to take the matter to arbitration. *Id.* at 1007. The court concluded that it should apply the rationale enunciated in *Village of Creve Coeur* to conserve judicial resources and time, and it therefore affirmed the circuit court. *Id.*

¶ 60    Again, in *City of Rockford v. Unit Six of the Policemen's Benevolent & Protective Ass'n*, 362 Ill. App. 3d 556 (2005), the appellate court held that *res judicata* precluded the defendant union from filing a grievance seeking reinstatement of the defendant police officer. The officer had been terminated by the Rockford board of fire and police commissioners following a hearing. The union later filed a labor grievance with the deputy chief, alleging that the board

had violated the parties' collective bargaining agreement by failing to progressively discipline the officer. The grievance was denied. The officer thereafter appealed his discharge to the circuit court, again arguing that his collective bargaining agreement required progressive discipline. The day after he filed his appeal in the trial court, the union demanded labor arbitration for the grievance. In response, the city filed a complaint for declaratory judgment and permanent stay of arbitration on the grievance. While the declaratory judgment remained pending, the trial court on administrative review affirmed the board's findings and order terminating the officer's employment. The officer did not appeal the trial court's order on administrative review to the appellate court. The trial court subsequently granted summary judgment in favor of the city in its declaratory judgment action, finding that the elements of *res judicata* were present.

¶ 61    Citing *Peregrine Financial*, 309 Ill. App. 3d 101, the appellate court held that the right to pursue labor arbitration is limited by the effect of the *res judicata* doctrine and where such actions involve issues previously reached, they are barred notwithstanding the parties' contractual right to bring them. *City of Rockford*, 362 Ill. App. 3d at 561. The appellate court rejected the defendant's claim that the causes of action were not identical for purposes of *res judicata*, noting that although the union's grievance raised an additional claim regarding the discharge, the union's goal was the same—to reinstate the officer on the police force. *Id.* at 562. All the arguments the union now raised could have been raised by the officer or the union in the earlier proceeding. *Id.*

¶ 62    The *City of Rockford* court also questioned "why the Union waited until the Board issued its order to discharge [the officer] before seeking arbitration." *Id.* at 565. Both defendants were aware from the time of the hearing that the city was seeking a discharge, and the union president and a union representative were present throughout the hearing. *Id.* The appellate court observed that "if the Union felt so strongly that the Board had no authority to discharge [the officer], it could have sought an injunction to stay the Board from continuing the hearing." *Id.* Rather than do so, the defendants allowed the board's decision to become final before the union instituted the grievance procedure. *Id.*

¶ 63    As noted, the appellate court majority in this case never acknowledged the preceding appellate decisions in summarily rejecting plaintiff's *res judicata* argument. Defendants acknowledge the decisions but discount the decisions without analysis on the basis that *Peoria Firefighters* and *Creve Coeur* were decided prior to the 1999 and 2007 amendments to the Municipal Code and *City of Rockford* was decided prior to the 2007 amendments. Defendants do not even discuss the decision in *Board of Governors*. Further, although defendants make the claim that the 1999 and 2007 amendments to the Municipal Code defeat any precedential value of the preceding cases, defendants never discuss those amendments, nor do they set forth how the amendments altered the Municipal Code.

¶ 64    The relevant portion of the Municipal Code prior to the 1999 amendment provided:

> "Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense." 65 ILCS 5/10-2.1-17 (West 1998).

¶ 65    The 1999 amendment added the following, after the preceding sentence:

- 13 -

"The hearing shall be as hereinafter provided, unless the employer and the labor organization representing the person have negotiated an alternative or supplemental form of due process based upon impartial arbitration as a term of a collective bargaining agreement. In non-home rule units of government, such bargaining shall be permissive rather than mandatory unless such contract term was negotiated by the employer and the labor organization prior to or at the time of the effective date of this amendatory Act, in which case such bargaining shall be considered mandatory." 65 ILCS 5/10-2.1-17 (West 2000).

¶ 66    The 2007 amendment changed the language of the 1999 amendment to read as follows:

"Such bargaining shall be mandatory unless the parties mutually agree otherwise. Any such alternative agreement shall be permissive." 65 ILCS 5/10-2.1-17 (West 2008).

¶ 67    As noted, we do not have the benefit of an analysis from defendants concerning why the amendments to the Municipal Code render the previously discussed appellate decisions distinguishable from the instant case. It is possible defendants believe that if the preceding amendments had been enacted when those cases were decided, the appellate court would have found that *res judicata* did not apply to bar grievance arbitration because collective bargaining ultimately was made mandatory unless otherwise agreed.

¶ 68    Defendants' posture on appeal, however, reveals that they do not understand the *res judicata* analysis applied in the previously discussed appellate decisions. It may be true that an arbitrator would find that Lopez's disciplinary matter was subject to mandatory grievance arbitration. And it may be true that had the 1999 and 2007 amendments to section 10-2.1-17 been enacted at the time the preceding appellate decisions were decided, the parties may have had a right to mandatory arbitration. Nevertheless, and as the previous appellate decisions clearly demonstrate, a party's right to pursue mandatory grievance arbitration may be limited by the effect of the *res judicata* doctrine if the arbitration involves issues reached in a prior adjudication, which is manifestly the case here.

¶ 69    With regard to *res judicata*, defendants do not dispute that there is an identity of the parties or their privies. Defendants do deny that there was a final judgment on the merits rendered by a court of competent jurisdiction. Defendants claim that the Board has not and cannot issue a final judgment regarding a violation of the labor contract, so that plaintiff cannot establish *res judicata*.

¶ 70    Defendants are correct that the Board did not issue a final judgment regarding a violation of the labor contract. However, that is not the issue for purposes of this element of *res judicata*. At issue here is whether the Board was a court of competent jurisdiction and, if so, whether the Board issued a final judgment on the merits.

¶ 71    Administrative decisions have *res judicata* and collateral estoppel effect where the administrative determination is made in proceedings that are adjudicatory, judicial, or quasijudicial in nature. *Marco v. Doherty*, 276 Ill. App. 3d 121, 124-25 (1995). Here, there was an adversarial hearing conducted under oath and on the record. Lopez testified at the hearing before the Board, and counsel for defendants presented evidence, cross-examined witnesses, and made a closing argument. The Board's administrative hearing, then, was judicial in nature.

¶ 72    Following the hearing, the Board issued a decision. Defendants failed to seek judicial review of the Board's decision pursuant to the Administrative Review Law, so that decision became a final judgment on the merits. Consequently, plaintiff is correct that, for purposes of

*res judicata*, there was a final judgment on the merits rendered by a court of competent jurisdiction in this case.

¶ 73 Defendants next argue that *res judicata* does not apply in this case because there is no identity of cause of action. Defendants assert that there is no identity of cause of action because the issue of "just cause" has not been decided. Defendants point out that the labor contract between the parties sets forth a "just cause" standard for discipline, while the Board only applied the "cause" standard set forth in the Municipal Code. Defendants cite the decision in *Ryherd v. General Cable Co.*, 124 Ill. 2d 418 (1988), in support of their argument. Defendants note that in *Ryherd*, the court held that an employee that grieved her discharge to arbitration under federal labor law was not precluded from thereafter seeking to recover in state court for retaliatory discharge. *Ryherd* observed that an arbitrator would be deciding whether there was "just cause" to discharge a worker, while the tort of retaliatory discharge does not require "just cause" for all dismissals. *Id.* at 427. *Ryherd* concluded that it would be "a fundamental error to equate dismissals which violate State tort law with dismissals violative of a typical collective-bargaining agreement." *Id.*

¶ 74 We first note that *Ryherd* is not on point, as the court expressly pointed out that the appellee in that case had not invoked the doctrine of *res judicata* or collateral estoppel. *Id.* at 432. Further, defendants misunderstand the identity of cause of action element of *res judicata*. As noted, this court applies a transactional test to determine whether the causes of action are the same for purposes of *res judicata*. *River Park, Inc.*, 184 Ill. 2d at 311. Pursuant to the transactional test, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief. *Id.*

¶ 75 Here, the claims in defendants' grievance and the claims before the Board arose from a single group of operative facts. Plaintiff sought to terminate Lopez's employment with plaintiff's police department based upon misconduct. The facts underlying the complaint for termination that were heard before the Board are identical to the facts that would underlie a grievance filed by Lopez in response to plaintiff's complaint for termination. Defendants' objective in the Board action was the same as their objective in the grievance—to defend Lopez from the misconduct charges and to prevent his termination from employment as a police officer.

¶ 76 Although defendants claim that *res judicata* does not apply because the Board did not consider just cause, the doctrine of *res judicata* acts as a bar not only to a subsequent suit between the parties involving the same cause of action but also extends to matters that could have been decided in the first action. *Id. Res judicata* embraces all grounds of recovery and defense involved and which might have been raised in the first action. *Hughey*, 76 Ill. 2d at 583. Defendants could have filed a grievance when they received the complaint for termination. Defendants could have raised the issue of just cause at the hearing before the Board. Defendants could have filed a complaint for declaratory judgment prior to the Board hearing, alleging that the Board was divested of jurisdiction pursuant to the parties' labor contract. Defendants did none of these things.

¶ 77 Likewise, defendants now complain that the labor contract required discipline to be "progressive and corrective" and that termination be reserved for "extreme cases" but the Board did not apply that standard. Again, defendants could have raised these claims at the

Board hearing but did not do so. A party cannot assign "new reasons for holding the agreement invalid, which existed at the time that decision was rendered," in order to relitigate the question settled by the prior decree. (Internal quotation marks omitted.) *Id.* Because defendants' claims concerning the standards for discipline or termination of officers in the labor contract existed at the time the Board decision was rendered, we find that defendants are now barred from relitigating these claims.

¶ 78   The purpose of *res judicata* is to promote judicial economy by requiring parties to litigate, in one case, all rights arising out of the same set of operative facts, as well as to prevent imposing an unjust burden that would result if a party could be forced to relitigate what is essentially the same case. *River Park, Inc.*, 184 Ill. 2d at 319. These purposes would be undermined if defendants now were permitted to pursue their grievance after defending the same cause of action before the Board.

¶ 79   Because defendants' grievance was barred pursuant both to principles of waiver as well as the doctrine *res judicata*, plaintiff was entitled to summary judgment in its favor on its complaint for declaratory judgment and for stay of arbitration. We therefore affirm the trial court's judgment on that basis and reverse the appellate court's order, which reversed the trial court and remanded the cause to the trial court to order the parties to proceed to arbitration.

¶ 80   Appellate court judgment reversed.

¶ 81   Circuit court judgment affirmed.

¶ 82   JUSTICE KILBRIDE took no part in the consideration or decision of this case.