In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 23-2502

LARRY D. SAPP,

*Plaintiff-Appellant,*

*v.*

KIMBERLY FOXX, Individually and in her official capacity,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-05314 — **Edmond E. Chang**, *Judge.*

---

ARGUED MARCH 28, 2024 — DECIDED JULY 3, 2024

---

Before BRENNAN, SCUDDER, and LEE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Like many other states, Illinois bars certain felons from holding public office. Before us is a constitutional challenge to two such statutes, which the Cook County State's Attorney's Office used to oust Larry Sapp from his position on the Sauk Village Board of Trustees. Sapp contends that by barring him from public service—and by depriving him of the income a career in public service would generate—these laws violate the Cruel and Unusual

Punishment and Excessive Fines Clauses of the Eighth
Amendment to the U.S. Constitution. We do not reach the
merits of those contentions, however, because they are fore-
closed by Illinois principles of collateral estoppel and *res judi-
cata.* Accordingly, we affirm the dismissal of Sapp's com-
plaint.

**I**

**A**

Larry Sapp is an Army veteran with an admirable history
of service to the nation. He is also a victim of sexual assault.
During basic training in 1975, Sapp was raped by several of
his fellow servicemembers. The trauma of that event followed
Sapp long after he left the military. For years, his mental
health struggles went untreated. And so Sapp turned to ille-
gal drugs to cope. That path led to felony drug convictions in
1988 and 1998 for manufacturing controlled substances in vi-
olation of Illinois law, as well as a stint in state prison.

Sapp left prison resolved to turn his life around. With the
help of mental health treatment, he overcame his addiction,
came to grips with his past, and set course on a life of com-
munity service. In the years since his recovery, Sapp has
founded two non-profit organizations and become a mentor
to others struggling with addiction and post-traumatic stress
disorder. By any measure, he has become a productive citizen
and a respected member of his community.

**B**

In 2021 the people of Sauk Village elected Sapp to a four-
year term on the Village's Board of Trustees. Sapp ran for the
post believing in good faith that he was eligible to hold public
office, despite his criminal history. And for several months,

he served without incident. But in time Sapp's felony convictions came to the attention of the Cook County State's Attorney's Office, which filed a so-called *quo warranto* action against Sapp in Cook County Circuit Court. See *People of Illinois v. Sapp*, No. 22-CH-02567.

The purpose of a *quo warranto* proceeding is to "achieve the ouster of a person who is illegally occupying a public office." *Goral v. Dart*, 181 N.E.3d 736, 753–54 (Ill. 2020). Upon proof that a person is ineligible to hold a particular position, an appropriate court may enter an order removing the person from office. See 735 ILCS 5/18-108.

The State's Attorney's Office's complaint identified two Illinois statutes it believed barred Sapp from continued service as a Board Trustee: 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b). The first of these statutes is section 29-15 of the Illinois Election Code, which prohibits

> [a]ny person convicted of an infamous crime as such term is defined in Section 124-1 of the Code of Criminal Procedure of 1963, as amended, … from holding any office of honor, trust, or profit, unless such person is again restored to such rights by the terms of a pardon for the offense, has received a restoration of rights by the Governor, or otherwise according to law.

10 ILCS 5/29-15.

The second is section 3.1-10-5(b) of the Illinois Municipal Code, which provides that

> [a] person is not eligible to take the oath of office for a municipal office if that person is, at the time required for taking the oath of office, in

arrears in the payment of a tax or other indebt-
edness due to the municipality or has been con-
victed in any court located in the United States
of any infamous crime, bribery, perjury, or other
felony, unless such person is again restored to
his or her rights of citizenship that may have
been forfeited under Illinois law as a result of a
conviction, which includes eligibility to hold
elected municipal office, by the terms of a par-
don for the offense, has received a restoration of
rights by the Governor, or otherwise according
to law.

65 ILCS 5/3.1-10-5(b).

Represented by counsel, Sapp did not dispute that his
drug felonies triggered application of these statutes. (He did
appear to argue that a different statute, 730 ILCS 5/5-5-5, re-
stored his right to run for office, but the Cook County Court
rejected that position and Sapp has not pressed it here.) Nor
did he contest that his position on the Sauk Village Board of
Trustees qualified as an "office of honor, trust, or profit" un-
der the Election Code and as a "municipal office" under the
Municipal Code. Sapp instead attacked the constitutionality
of the statutes, arguing that enforcing either against him
would violate the Eighth Amendment's Excessive Fines
Clause by indefinitely depriving him of the economic oppor-
tunity to earn a living as a public servant. Sapp reasoned that
such a result would be tantamount to asset forfeiture, grossly
disproportionate to the severity of his drug felonies.

The Cook County Court disagreed, determining that en-
forcing the statutes against Sapp would not offend the Exces-
sive Fines Clause because the "the deprivation of future

salary" does not constitute a "fine" within the meaning of the Eighth Amendment. The State of Illinois, after all, would not receive anything of value—whether in cash or in kind—by ousting Sapp from office. Sapp's removal would mean only that someone else would receive the $600 stipend Sauk Village had previously paid Sapp each month. Having rejected Sapp's sole defense to removal, the state court held that Sapp was ineligible to serve as a Board Trustee and entered an order removing him from his position.

C

Two days before the Cook County Court issued that order, Sapp commenced this suit against Illinois Governor J.B. Pritzker and State's Attorney Kimberly Foxx in federal court. Sapp's initial aim was to forestall his removal from office by securing either a declaratory judgment that the State's proposed application of 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b) would violate the Eighth Amendment or an injunction requiring the Governor to issue him a pardon.

But Sapp's litigation strategy evolved following his removal from office. He remained committed to returning to service on the Sauk Village Board of Trustees, but Illinois law and the State's Attorney's Office stood in the way. When Sapp filed a statement with the Village declaring his intent to run anew for an open Board seat, the State's Attorney's Office asked the Cook County Court to hold him in contempt. The court denied that motion, explaining that its order had removed Sapp only from the specific position he occupied at the time of the *quo warranto* action. But Sapp withdrew from the race nonetheless due to what he saw as "relentless and aggressive" efforts by the State's Attorney's Office to enforce 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b) against him.

To clear a path forward, Sapp filed an amended complaint seeking to bar the Cook County State's Attorney from enforcing either statute against him in future elections. As he had in both the Cook County Court and his initial federal complaint, Sapp insisted that the application of either Illinois statute to him would violate the Eighth Amendment. Sapp gave two reasons for this conclusion. He first renewed his contention, already rejected by the Cook County Court, that enforcement of the statutes would violate the Excessive Fines Clause by depriving him of the opportunity to earn a salary as a public servant.

To that Sapp added a new argument: that enforcing the statutes against him would violate the Cruel and Unusual Punishment Clause by inflicting a criminal punishment— debarment from public service—grossly disproportionate to his drug felonies. See *Rummel v. Estelle*, 445 U.S. 263, 271 (1980) (explaining that "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of [a defendant's] crime"); see also *Ewing v. California*, 538 U.S. 1, 21 (2003) (same). In this way, then, Sapp's federal lawsuit evolved from a last-ditch effort to remain in public office into a vehicle for winning election a second time.

The State's Attorney moved to dismiss Sapp's amended complaint under Federal Rule of Civil Procedure 12(b)(6). Although disagreeing with the merits of Sapp's position, the State's Attorney principally sought dismissal on grounds of collateral estoppel and *res judicata*. The State's Attorney emphasized that the Cook County Court had rejected Sapp's excessive fines argument just six months before, in an action in

which Sapp had every opportunity to raise his Cruel and Un-
usual Punishment Clause argument.

The district court granted the State's Attorney's motion on
the merits (as well as on a few other grounds we need not dis-
cuss) without reaching the question of preclusion. Conclud-
ing that 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b) are civil—
rather than penal—in nature, the district court held that the
Eighth Amendment's Cruel and Unusual Punishment Clause
does not apply. The district court then rejected Sapp's "argu-
ment that the Excessive Fines Clause applies to the loss of po-
tential future earnings," agreeing with the conclusion of the
Cook County Court.

## II

### A

Sapp challenges these rulings on appeal. For her part, the
State's Attorney emphasizes that the appeal lends itself to
swift resolution on the non-constitutional grounds of collat-
eral estoppel and *res judicata*. We agree.

In an ordinary case, this dispositional ground would not
be before us. That is because collateral estoppel and *res judi-
cata* are affirmative defenses that generally must be asserted
by defendants in their answer to the plaintiff's complaint and
then raised in either a motion for judgment on the pleadings,
see Fed. R. Civ. P. 12(c), or summary judgment, see Fed. R.
Civ. P. 56(a). See *Walczak v. Chi. Bd. of Educ.*, 739 F.3d 1013,
1016 n.2 (7th Cir. 2014); *H.A.L. NY Holdings, LLC v. Guinan*,
958 F.3d 627, 631–32 (7th Cir. 2020); *Hicks v. Midwest Transit,
Inc.*, 479 F.3d 468, 470 (7th Cir. 2007). Although this case did
not proceed on those lines, the parties fully litigated the issue
in the district court and have continued to do so on appeal.

Even more, we may affirm "on any ground supported by the record so long as the issue was raised and the non-moving party had a fair opportunity to contest the issue in the district court." *Locke v. Haessig*, 788 F.3d 662, 666 (7th Cir. 2015).

In these circumstances, where the parties have litigated the preclusion issue not once but twice, we are comfortable resolving the case on that ground. See *Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) (reaching the same conclusion under similar circumstances); see also *H.A.L. NY Holdings, LLC*, 958 F.3d at 632. That course accords with our general obligation to refrain from unnecessary forays into constitutional law. See *Jean v. Nelson*, 472 U.S. 846, 854 (1985) ("'Prior to reaching any constitutional questions, federal courts must consider non-constitutional grounds for decision.'" (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981))); see also *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 341 (1936) (Brandeis, J., concurring).

B

We apply Illinois law to determine whether preclusion principles bar Sapp's federal claims. That conclusion follows from 28 U.S.C. § 1738, which requires us to give the Cook County Court's *quo warranto* judgment "the same preclusive effect it would have in" an Illinois court. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 560 (7th Cir. 1999); *Walczak*, 739 F.3d at 1016; see also *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts.").

Recall again the procedural history: Sapp used the *quo warranto* action in the Cook County Court as an opportunity to challenge the constitutionality of 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b) under the Excessive Fines Clause of the Eighth Amendment. The state court rejected the merits of Sapp's position in a reasoned opinion that followed full briefing by both sides. That legal ruling was necessary to the court's ultimate judgment ousting Sapp from public office.

Our task on appeal is to decide what preclusive effect Illinois law gives to that judgment in the context of the Eighth Amendment claims Sapp presses in this federal action.

As for Sapp's claim under the Excessive Fines Clause, the answer is straightforward. The Illinois doctrine of collateral estoppel "precludes a party from relitigating an issue decided in a prior proceeding." *Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000). For the doctrine to apply, three things must be true: "(1) the issue decided in the prior proceeding must be identical to the one in the current suit; (2) the prior adjudication must have been a final judgment on the merits; and (3) the party against whom the estoppel is asserted must have been a party to, or must be in privity with a party to, the prior adjudication." *Hope v. Clinic for Women, Ltd. v. Flores*, 991 N.E.2d 745, 764 (Ill. 2013); see also *Herzog v. Lexington Twp.*, 657 N.E.2d 926, 930 (Ill. 1995) (applying the same three-factor test).

All three requirements are met here. Sapp was a party to the *quo warranto* action. That litigation resulted in a final judgment on the merits removing Sapp from his position on the Sauk Village Board. And necessary to that judgment was the Cook County Court's rejection of the precise excessive fines argument Sapp presses in his amended federal complaint. So

we have no trouble concluding that Illinois's doctrine of collateral estoppel precludes Sapp from relitigating that argument in this suit

That leaves Sapp's claim under the Cruel and Unusual Punishment Clause. The State's Attorney suggests that Sapp presented this argument to the Cook County Court. We disagree. Although Sapp did touch on proportionality in his state court brief—describing 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b) as "excessive" in relation to his drug felonies—he appeared to do so in the context of explaining why the indefinite forfeiture of future earnings in his case constituted an excessive fine. Sapp's discussion of proportionality took place in a sub-heading expressly dedicated to establishing that those statutes imposed an excessive fine. Nowhere did he rely on case law that would support an argument under the Cruel and Unusual Punishment Clause. So we cannot say that the issue was raised, let alone decided, in the state court litigation.

But that does not mean Sapp is free to raise the claim in this federal case. Under the doctrine of *res judicata*—known as claim preclusion in many other jurisdictions—"a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action," regardless of whether the second proceeding involves new arguments not passed upon in the initial action. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998). Put another way, where a second suit involves "the same cause of action" as an earlier one between the same parties, the bar of *res judicata* prohibits parties in the second suit from raising a "matter[] that could have been decided in [the first] suit." *Id.*

As with collateral estoppel, Illinois law tells us that three things must be true for *res judicata* to bar subsequent litigation: (1) "a final judgment on the merits rendered by a court of competent jurisdiction," (2) "an identity of cause of action," and (3) "an identity of parties or their privies." *Id.* There can be no doubt that the first and third requirements are satisfied here. The Cook County Court entered a final judgment on the merits in the *quo warranto* action, and it had jurisdiction to do so. See 735 ILCS 5/18-108. And although the State's Attorney brought the *quo warranto* action in the name of the people of Illinois (in short, the State)—whereas here she is a defendant in her personal capacity—Illinois law deems state officers, like State's Attorneys, to be in privity with the state itself. See *Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002); *Ingemunson v. Hedges*, 549 N.E.2d 1269, 1271–72 (Ill. 1990). Whether *res judicata* bars Sapp's claim under the Cruel and Unusual Punishment Clause turns therefore on the second factor—on there being an "identity of cause of action" between this federal lawsuit and the *quo warranto* action in the Cook County Court.

Illinois law does not use "cause of action" here in its technical sense, as denoting, for instance, the source of a party's authority to sue or the source of the legal rights sought to be vindicated. The phrase instead carries a "transactional" meaning. See *River Park*, 703 N.E.2d at 893; see also *Village of Bartonville v. Lopez*, 77 N.E.3d 639, 650 (Ill. 2017). Separate claims constitute a single cause of action under Illinois law if "they arise from a single group of operative facts." *River Park*, 703 N.E.2d at 893. This is so "regardless of whether they assert different theories of relief." *Id.* That Sapp seeks something different in this action (declaratory and injunctive relief clearing a path to future election) than he sought in the Cook County

Court (the right to remain in office) is thus of little moment. What matters is whether each proceeding arose from the same core of operative facts.

The Illinois Supreme Court has stressed time and again that this is a flexible inquiry that courts should approach "'pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *First Midwest Bank v. Cobo*, 124 N.E.3d 926, 930 (Ill. 2018) (quoting *River Park*, 703 N.E.2d at 893 (in turn quoting Restatement (Second) of Judgments § 24(2) (1982))).

Applying these principles to the unusual facts of this case, three considerations lead us to conclude that Sapp's federal lawsuit arises out of the same group of operative facts as did the State's Attorney's *quo warranto* action.

*First*, the two cases align closely in time, origin, and motivation. The federal action began *during* the quo warranto litigation, and by Sapp's own admission its purpose was to bring the state suit to a favorable end. Both proceedings thus trace their origins to the State's Attorney's effort to remove Sapp from the Sauk Village Board of Trustees. And although the remedial scope of the federal suit evolved after Sapp was removed from office, the suit nonetheless remained at its core a dispute over the State's Attorney's Office's efforts to bar Sapp's future service on the Sauk Village Board of Trustees.

*Second*, in the brief interlude between the end of the *quo warranto* litigation and the present appeal, the essential facts have remained unchanged. Sapp's criminal record remains

the same, and 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b) con-
tinue to apply to those convictions. The only difference is that
Sapp is no longer a sitting Sauk Village Trustee. On these
facts, this lawsuit represents nothing less than a request for a
second bite at the apple—an effort to bring a better and per-
haps stronger version of the defense that fell short in the Cook
County Court. Opening the courthouse door to such litigation
risks far-reaching consequences. If a candidate could over-
come the strictures of *res judicata* merely by pointing to the
fact that he is re-running for an old position, candidates for
election could relitigate legal challenges every election cycle
without meaningful limit. We find it most unlikely the Illinois
Supreme Court would approve of such a practice, at least
where nothing has changed from one election cycle to the
next.

*Third*, Sapp's own conduct in the Cook County litigation
shows that he understood that *then* was the time to challenge
the constitutionality of 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-
5(b). Rather than contest the applicability of the statutes to his
criminal history or to the position of Sauk Village Board Trus-
tee, Sapp raised a constitutional defense. Holding Sapp to the
arguments he made in that proceeding is hardly unreasonable
given his strategic choice to invoke the protection afforded to
him by the Eighth Amendment to the U.S. Constitution. Once
he made that decision, Illinois law obligated him to bring all
arguments to bear on that issue. See *Village of Bartonville*, 77
N.E.3d at 650 ("*Res judicata* embraces all grounds of recovery
and defense involved and which might have been raised in
the first action."); *Lake v. Tomes*, 90 N.E.2d 774, 777 (Ill. 1950)
(same).

Sapp's sole argument against preclusion rests on the Cook County Court's refusal to hold him in contempt for pursuing reelection to the Sauk Village Board of Trustees. Stressing that the Cook County Court "clarified" that the scope of its order was limited to removing him from his position at the time—not to bar him from standing for election in the future—Sapp insists that he can relitigate constitutional objections to 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b) in this federal case. That position misses the mark. The Cook County Court's ruling did not opine on the preclusive effect that its rulings might have in future cases. It responded to the very different question whether Sapp's efforts to win reelection to the Board violated the terms of its order ousting Sapp from office.

At the end of the day, we conclude that this suit—including Sapp's claim under the Cruel and Unusual Punishment Clause—arises out of the same group of operative facts as did the State's Attorney's *quo warranto* action in Cook County Court. The two cases thus constitute the same "cause of action" under Illinois law, with the consequence being that Illinois's doctrine of *res judicata* bars Sapp from raising arguments in this suit that were available to him before the Cook County Court. When Sapp decided to challenge the constitutionality of 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b) in state court, it was incumbent on him to raise a complete defense.

## C

Our conclusion is limited. We are not saying that Sapp is forever barred from challenging these statutes going forward. The passage of time may bring with it changed circumstances that alter the analysis under Illinois law. We note, too, that Illinois law recognizes a number of exceptions to *res judicata*

that we do not consider because Sapp did not raise them. See *Tebbens v. Levin & Conde*, 107 N.E.3d 263, 285 (Ill. App. Ct. 2018) ("Where [a] defendant[] … establish[es] a *prima facie* case for application of *res judicata*, it is [the plaintiff's] burden to establish the applicability of any exception."); see also *Venturella v. Dreyfuss*, 84 N.E.3d 386, 395 (Ill. App. Ct. 2017) (same).

For today, all we hold is that given the close relationship of the *quo warranto* action and this proceeding—in time, origin, and purpose—Sapp may not raise constitutional challenges to 10 ILCS 5/29-15 and 65 ILCS 5/3.1-10-5(b) in this proceeding that were available to him in the *quo warranto* action.

For these reasons, we AFFIRM.